**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Karen Ruth GORDON and David R. Woodcock, Defendants-Appellants.**

No. 86–4556.

United States Court of Appeals, Fifth Circuit.

March 9, 1987.

---

Rebecca L. Hudsmith, Shreveport, La. (Ct. Appt.), Alfred R. Beresko, Shreveport, La., (court appointed) for Karen Ruth Gordon.

E. Daniel Burt, Jr., Bain & Burt, Kim Hanson LaVigne, Shreveport, La., for Woodcock.

Joseph G. Jarzabek, Joseph S. Cage, Jr., U.S. Attys., D.H. Perkins, Jr., Asst. U.S. Atty., Shreveport, La., for plaintiff-appellee.

Before EDWARDS,* RUBIN and HILL, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Contending that, due to her psychological impairments, her statements to investigating officials and waivers of her *Miranda* rights were involuntary, a battered and sexually abused wife who conditionally pleaded guilty to aiding and abetting her husband's murderer after the fact appeals from a district court order denying her motion to suppress evidence she provided the government. The codefendant, the man convicted of murdering the battered woman's husband, also appeals from his conviction, raising the issue of the voluntariness of the woman's cooperation as well as claims arising from his own trial. We find that the woman's cooperation was not coerced and that none of the other asserted errors mandates reversal of the murder conviction and, therefore, affirm the judgments of conviction.

I.

In November 1985 Karen Ruth Gordon and David R. Woodcock were arrested and jointly indicted for charges arising out of the murder of Gordon's husband, Senior Master Sergeant Harry Michael Gordon, at Barksdale Air Force Base in Louisiana. Gordon was accused of conspiring with Woodcock to kill her husband and with aiding and abetting Woodcock's efforts to that end. Woodcock was charged with conspiracy to murder and with murder. The government's case was founded largely on statements Gordon made to agents of the FBI and the Air Force Office of Special Investigation ("OSI") during their investigation of the shooting death of her husband and on two telephone conversations between Gordon and Woodcock recorded with Gordon's permission after she had been identified as a suspect, arrested, and given *Miranda* warnings.

Gordon, a battered wife whose husband sexually abused her and her children, filed a motion to suppress the oral and written statements she made to investigators and the recordings of her telephone conversations with Woodcock. Contending that her psychological problems—including Battered Woman's Syndrome, dependent personality disorder, depression, and alcohol abuse—left her vulnerable and emotionally needy, Gordon argued that the nurturing and supportive posture adopted by agents investigating her husband's death effectively coerced her into cooperating. As a result, she contended, the incriminating statements she made to investigators were not the product of her free and rational choice and her waiver of her *Miranda* rights was involuntary and unwitting.

Hoping to boot-strap upon Gordon's claims, Woodcock also sought suppression of evidence against him. He contended that, because Gordon's statements and waivers were not voluntary and knowing, the evidence she provided investigating FBI and OSI agents could not be used against him. Woodcock also sought to suppress all evidence obtained as a result of a search of his home on the theory that the warrant authorizing the search was obtained solely on the basis of Gordon's tainted statements and waivers.

A four-day hearing on the motions was held before a United States Magistrate. Immediately following the hearing, the magistrate ruled from the bench, denying the motions. Chief Judge Stagg then gave Gordon and Woodcock the opportunity to file briefs seeking to overturn the magistrate's ruling.

Pending the district court's decision, Gordon entered a plea agreement with the prosecution whereby she conditionally pleaded guilty to one count of accessory after the fact to first degree murder. As

---

* Circuit Judge of the Sixth Circuit, sitting by designation.

part of the agreement, Gordon reserved the right to appeal the district court's denial of her motion to suppress and agreed to testify for the government at Woodcock's trial. Her testimony aided the government in securing a conviction of Woodcock on first degree murder on July 8, 1986. The same day, Woodcock was sentenced to life imprisonment.

Two days later, the district court issued an opinion and order rejecting each argument raised by Gordon and Woodcock. The court held that neither Gordon's statements nor her waiver of her *Miranda* rights was involuntary or uninformed. After a psychological evaluation ordered pursuant to 18 U.S.C. § 4205(c) had been completed, Gordon was sentenced to ten years imprisonment.

On appeal, Gordon raises the same issues that she argued before the district court. Once again, Woodcock joins her in asserting that the trial court erred in denying the defense motions to suppress. He also alleges various other errors arising out of his trial and conviction.

## II.

◼ Chief Judge Stagg's thoughtful and thorough opinion [1] denying Gordon's motion to suppress sets forth in full the facts regarding the behavior of government agents who questioned Gordon in the course of investigating her husband's death. This account is not disputed. The opinion is equally thorough in its analysis of the psychological testimony offered in Gordon's behalf and in applying the relevant law regarding voluntariness of both confessions and waivers of *Miranda* rights. We therefore adopt its conclusion and analysis, adding only that its correct-

ness is confirmed by the Supreme Court's recent decision in *Colorado v. Connelly*.[2] "[C]oercive police activity is a necessary predicate to finding that a confession is not 'voluntary'...." [3] The record amply supports the district court's determination that the behavior of FBI and OSI agents in this case was not coercive in any legally prohibited or morally reprehensible manner. Gordon's motion to suppress was, therefore, properly denied.

Despite the government's apparent willingness to concede the issue, we, like the district court, question Woodcock's standing to challenge the voluntariness of Gordon's statements and waivers. We need not address that issue, however, because we have determined that Gordon's statements and waivers were voluntary and knowingly made. If the tree is not poisonous, it cannot bear poisoned fruit.

## III.

Woodcock raises several additional challenges to his conviction. He argues first that he was unfairly prejudiced by the addition of an aiding and abetting instruction to the jury on the last day of the trial. Although Woodcock correctly concedes that the aiding and abetting statute, 18 U.S.C. § 2 [4] does not define a separate crime,[5] he contends that the court's giving an instruction based on that statute unfairly surprised him because, until the final day of the trial, the prosecution's litigation posture suggested that it rested its case solely upon the theory that Woodcock himself pulled the trigger of the rifle that killed Sergeant Gordon. Moreover, he asserts, the prosecution offered no evidence that he aided or abetted any other person who may

1. *United States v. Gordon,* 638 F.Supp. 1120 (W.D.La.1986).

2. —— U.S. ——, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).

3. *Id.,* 107 S.Ct. at 522.

4. Title 18, United States Code, Section 2, provides:
 (a) Whoever commits an offense against the United States or aids, abets, counsels, com-

mands, induces or procures its commission, is punishable as a principal.
(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

5. *United States v. Walker,* 621 F.2d 163, 166 (5th Cir.1980), *cert. denied,* 450 U.S. 1000, 101 S.Ct. 1707, 68 L.Ed.2d 202 (1981); *United States v. Cowart,* 595 F.2d 1023 (5th Cir.1979); *Powers v. United States,* 470 F.2d 991 (5th Cir.1972).

have actually done the killing. He thus argues that he was given no opportunity to defend against conviction under a theory that he aided and abetted the actual murderer.

Woodcock's account of the trial is incorrect, for the government introduced significant evidence indicating that he hired someone else to do the shooting. Early in the trial Gordon testified that Woodcock had informed her of her husband's death and had told her that "they," Woodcock and his accomplice[s], had tried to make the murder look like an accident. She also told the jury that Woodcock had asked about her husband's life insurance coverage before the killing, demanded half the money after the killing was completed, and later informed her that $25,000 of the life insurance money demanded was for the hired gunman. He warned her that, if payment was not forthcoming, he and then Gordon and her children would be the killer's next victims.

 The words "aid and abet" need not appear in the indictment in order to sustain a conviction as an aider and abettor.[6] "[T]he rule is well established, both in this Circuit and others, that one who has been indicted as a principal may be convicted on evidence showing that he has merely aided and abetted the commission of the offense."[7] The law does not entitle a defendant to rely on the sole defense that, although he arranged the murder, he did not personally pull the trigger. Any early suggestion, therefore, that the government expected to prove that Woodcock was the actual gunman rather than only an aider and abettor did not unfairly prejudice his defense.

 Woodcock also challenges the trial court's ruling denying his motion for judgment of acquittal. Evidence is sufficient to support a conviction if, when viewed most favorably to the government and leaving all questions of credibility to the jury, it could be found by a reasonable jury to establish guilt beyond a reasonable doubt.[8] Once again, Woodcock's argument is founded on the false premise that he could not be convicted unless the prosecution proved that he was at the scene of the crime at the time of the killing and personally pulled the trigger. Moreover, the evidence that Woodcock at least aided and abetted in the murder is overwhelming. Gordon's testimony and the recordings made of her conversations with Woodcock would alone suffice to uphold the conviction. The recordings corroborate Gordon's testimony that Woodcock had told her of his role in the murder and wanted her to remain calm and cover up what she knew. Although the government could produce no witness who actually saw the killing and the evidence linking Woodcock to the crime scene is sparse, the testimonial and circumstantial evidence implicating Woodcock is more than enough to sustain his conviction.

Woodcock also filed a motion in limine to exclude any reference to his extrinsic acts. As a result of the court's denial of his motion, the government was allowed to elicit testimony from Woodcock's daughter and an FBI agent with whom his daughter had spoken that Woodcock had told his daughter that he had been hired by the United States government to travel to Colombia and bring back—or kill—a drug dealer. In exchange for his services, Woodcock had said he would be paid between $50,000 and $60,000.

 Woodcock argues that this testimony constituted evidence of extrinsic offenses and was introduced for the sole purpose of disparaging his character, thus violating Rule 404(b) of the Federal Rules

---

6. *See, e.g., United States v. Masson,* 582 F.2d 961, 963 (5th Cir.1978); *United States v. Romero,* 495 F.2d 1356, 1359 (5th Cir.), *cert. denied,* 419 U.S. 995, 95 S.Ct. 307, 42 L.Ed.2d 267 (1974); *United States v. Trollinger,* 415 F.2d 527, 528 n. 3 (5th Cir.1969).

7. *United States v. Vines,* 580 F.2d 850, 853 (5th Cir.), *cert. denied,* 439 U.S. 991, 99 S.Ct. 591, 58 L.Ed.2d 665 (1978); *United States v. Longoria,* 569 F.2d 422, 424 (5th Cir.1978); *United States v. Bullock,* 451 F.2d 884, 888 (5th Cir.1971).

8. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Bowman,* 783 F.2d 1192, 1196 (5th Cir.1986).

of Evidence.[9] The government retorts that the evidence was not introduced to establish Woodcock's general criminal propensity but as corroboration of Gordon's testimony—and of the implication created by the tape recordings of Gordon's conversations with Woodcock—that Woodcock's motive for killing Mr. Gordon was the expectation that he would receive half of the deceased's life insurance benefits. According to the government, the testimony was offered to show that Woodcock had invented a story to satisfy any questions his daughter might ask when he suddenly came into possession of substantial sums of cash.

The government's explanation of the testimony is supported by the record. Although the prosecution attempted to prove that Woodcock had told his daughter that he was hired to kill (rather than arrest) the Colombian drug dealer, the prosecutor clearly stated in his closing argument that the government considered the story a fantasy designed to obscure the true source of the money Woodcock was receiving. Moreover, before the government introduced the testimony of Woodcock's daughter and the FBI agent, Karen Gordon had testified that Woodcock had told her that he was going to tell his daughter just such a story to explain his possession of the money. It is, therefore, unlikely that the jury misunderstood the implication of the testimony. If it did, that misunderstanding was corrected during closing arguments. Even if the testimony temporarily engendered prejudicial confusion, it cannot be said to have rendered Woodcock's trial fundamentally unfair given the substantial evidence of guilt in this case.

Woodcock also asserts that, during voir dire, the trial court effectively gave the prosecution an extra peremptory challenge by excusing a juror for cause although no clear bias had been established. The effect of giving the government an extra challenge, he contends, is the same as refusing to excuse a juror truly biased against the

defendant for cause: the defendant is deprived of a substantial right to his allotted number of peremptory challenges.

■■■ The decision of a trial court to excuse a juror for cause upon the suggestion of bias is within the sound discretion of the court.[10] The juror excused in this case testified that she doubted her ability to render an unbiased verdict if there was evidence that the victim had sexually abused children. Although Woodcock's attorney attempted to rehabilitate the juror and evoked a statement from her that she "probably could" render an unbiased verdict, she never unequivocally stated that she could. In view of stated difficulties with the issues and her "brutally honest" announcement of her reservations and uncertainties, the trial judge excused her for cause. Because we find that the trial court's decision was not an abuse of discretion, we need not address Woodcock's assertion that the trial court's action prejudiced his defense.

Finally, Woodcock complains that the trial court erroneously denied his motion for a mistrial which was made when his counsel learned that, during discovery, the government had failed to produce the last page of an Army ballistics report regarding rifle shells found at the scene of the murder and bullet fragments removed from the victim's body. As a result of the omission, Woodcock contends, the credibility of his expert witness was severely undermined and a key element of his defense strategy prejudiced.

Woodcock's expert testified that the shells found at the murder scene were substantially more weathered than those recovered from Woodcock's home. The implication Woodcock anticipated raising from this testimony was that the shells that investigators found at the murder scene did not come from Woodcock's home. He hoped thereby to cast doubt on the govern-

---

9. Fed.R.Evid. 404(b) states, in pertinent part: Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.

10. *United States v. McCord,* 695 F.2d 823, 828 (5th Cir.), *cert. denied,* 460 U.S. 1073, 103 S.Ct. 1533, 75 L.Ed.2d 953 (1983); *United States v. Taylor,* 554 F.2d 200, 202 (5th Cir.1977).

ment's theory that he had taken the shells from his home and planted them, along with bogus rifle targets, at the murder scene to make the killing look like an accidental shooting by someone engaged in target practice. Although the missing page of the report related to the anticipated weight of the bullet that killed Sergeant Gordon rather than to the casings, Woodcock contends that the revelation during cross examination that his witness was not fully informed of the Army technicians' findings may have made his expert look ill-prepared and unreliable to the jury.

■ The trial court's rulings on violations of pretrial discovery procedures are reviewed under an "abuse of discretion" standard.[11] "To support a claim for reversal of the exercise of that discretion, the accused must show prejudice to substantial rights."[12] Errors that do not affect substantial rights must be disregarded.[13]

■ Woodcock has failed to prove prejudice warranting reversal. The trial court held that the missing page was accidentally overlooked during the photocopying process. The record also shows that every effort was made to correct the government's oversight and to eliminate the implication Woodcock feared jurors would draw from the confusion. After calling a brief recess to examine the oversight, the trial court gave the jury a curative instruction explaining that the witness had been denied the benefit of the last page of the report due to the fault of neither counsel. Woodcock's expert then testified that he had reviewed the missing page during the recess and had determined that his conclusions were correct as originally stated. In looking, as we must,[14] to the totality of circumstances, surrounding the government's oversight including all of the evidence of guilt adduced, we conclude that any error that may have resulted was harmless beyond a reasonable doubt.[15] As we have previously noted, Gordon's testimony and the recordings of Woodcock and Gordon's conversations are, alone, sufficient to sustain Woodcock's conviction. The trial court, therefore, did not abuse its discretion by denying Woodcock's motion for a mistrial.

For the reasons stated above, the district court's order denying Karen Gordon's and David Woodcock's motions to suppress, the judgment of conviction entered on her plea of guilty, and the judgment entered on David Woodcock's conviction are AFFIRMED.

11. *United States v. Jennings,* 724 F.2d 436, 444 (5th Cir.), *cert. denied,* 467 U.S. 1227, 104 S.Ct. 2682, 81 L.Ed.2d 877 (1984).

12. *Id.* (quoting *United States v. Valdes,* 545 F.2d 957, 961 (5th Cir.1977)). *See also United States v. Arcentales,* 532 F.2d 1046 (5th Cir.1976); *United States v. Saitta,* 443 F.2d 830 (5th Cir.), *cert. denied,* 404 U.S. 938, 92 S.Ct. 269, 30 L.Ed.2d 250 (1971).

13. Fed.R.Crim.P. 52(a); *Leonard v. United States,* 386 F.2d 423 (5th Cir.1967).

14. *See, e.g., United States v. Watkins,* 741 F.2d 692, 695 (5th Cir.1984); *Harryman v. Estelle,* 616 F.2d 870, 876 (5th Cir.1980) (en banc).

15. *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *United States v. Lane,* 693 F.2d 385, 390 (5th Cir.1982).