**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 92-7134
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

MIGUEL BOTELLO,

Defendant-Appellant.

_____

Appeal from the United States District Court
For the Southern District of Texas
_____

(May 10, 1993)

Before JOHNSON, SMITH, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Defendant, Miguel Botello, was convicted by a jury of murdering Gerardo Luis Quintanilla while working in furtherance of a continuing criminal enterprise, in violation of 21 U.S.C. § 848(e) (1988), and of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i) (1988). Botello appeals, arguing that the district court erred by (a) instructing the jury on the law of aiding and abetting as to the murder charge, (b) denying his motion to dismiss on account of double jeopardy, (c) denying his motion for continuance, and (d) denying his motion to suppress evidence seized during a search of his vehicle. We affirm.

## I

Botello was an assassin for the cocaine dealer Juan Garcia-Abrego, one of the largest drug dealers in Mexico. Quintanilla was a member of a rival drug organization. Quintanilla was driving his Ford Bronco in Brownsville when the occupants of a Mercury Grand Marquis opened fire on his vehicle. Six shots hit Quintanilla, and he died. Botello was identified as the purchaser of the Mercury and the driver at the time of the shooting. After the murder, he returned to the auto dealership and said, "It's done with Quintanilla." There was conflicting testimony at trial as to whether Botello was the "trigger man." Botello was arrested after a routine traffic stop which resulted in the discovery of $148,000 in his car.

Botello was indicted for killing Quintanilla while working in furtherance of a continuing criminal enterprise, in violation of 21 U.S.C. § 848(e) (1988). Botello was also charged with money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i) (1988), in connection with the $148,000 found in his car. Botello's first trial ended in a mistrial. At the second trial Botello was found guilty on both counts, and was sentenced to life imprisonment for the murder, and 20 years imprisonment for the money laundering charge, to run concurrently with the life sentence.

**II**

**A**

Botello argues that the district court erred by instructing the jury on the law of aiding and abetting as to the murder count of the indictment. Botello contends that the instruction violated his right to be convicted only of the offenses charged in the indictment, because he was indicted as a principal and not as an aider and abettor. Botello concedes that, as a general rule, an aiding and abetting instruction may be given to the jury even though the indictment does not specifically mention aiding and abetting, so long as evidence is introduced to support an aiding and abetting conviction.[1] Botello argues, however, that he was unfairly surprised[2] by the aiding and abetting instruction because the indictment explicitly alleged that he was the principal *and not* an aider and abettor. According to Botello, "the Government . . . allege[d] in the indictment that [he] committed the murder in question by actually shooting the victim." Brief for Botello at 7. Botello contends that, "where it is clear that the Government makes

---

[1] *See* Brief for Botello at 9; *see also* 18 U.S.C. § 2 (1988); *United States v. Neal*, 951 F.2d 630, 633 (5th Cir. 1992) ("Aiding and abetting is not a separate offense, but it is an alternative charge in every indictment, whether explicit or implicit."); *United States v. Gordon*, 812 F.2d 965, 969 (5th Cir.) (holding that aiding and abetting instruction was not erroneous, because "[t]he words `aid' and `abet' need not appear in the indictment in order to sustain a conviction as an aider and abettor," and because evidence introduced by the government indicated that the defendant acted as an aider and abettor), *cert. denied,* 483 U.S. 1009, 107 S. Ct. 3238, 97 L. Ed. 2d 743 (1987).

[2] *See Neal*, 951 F.2d at 633 ("Absent a showing of unfair surprise, it is not an abuse of discretion to give an aiding and abetting instruction.").

-3-

a specific decision to allege that one Defendant is the shooter and a co-defendant is the one who aids and abets, . . . they should not be allowed to change their theory at the end of the trial."[3] *See id.* at 8. We review the district court's decision to give the aiding and abetting instruction for abuse of discretion. *See United States v. Neal*, 591 F.2d 630, 633 (5th Cir. 1992) (holding that "it was not an abuse of discretion for the trial court to instruct the jury on aiding and abetting").

We reject the argument that Botello was unfairly surprised by the aiding and abetting instruction, chiefly because the language of the indictment did not limit Botello's conduct to that of a principal. The superseding indictment stated:

> Defendant MIGUEL LUCIO BOTELLO, aided and abetted by Defendant ARCADIO PEREZ, did intentionally kill Gerardo Luis Quintanilla while working in furtherance of a continuing criminal enterprise . . . . [Violation: Title 21, United States Code, Section 848(e) and Title 18, United States Code, Section 2].

Record on Appeal, vol. 4, at 439 (bracketed material in original). Botello argues that, because the indictment contained the phrase "aided and abetted by Defendant ARCADIO PEREZ," the indictment specifically charged that Perez was the aider and abettor and Botello was the principal. Botello reads too much into the phrase "aided and abetted by Defendant ARCADIO PEREZ." That language describes Perez's role in the offense, not Botello's. With respect to Botello's conduct, the indictment merely states that he "did

---

[3] Botello properly preserved this issue by raising it at trial. The district court concluded that Botello was not unfairly surprised by the instruction and overruled Botello's objection. *See* Record on Appeal, vol. 26, at 7-26.

-4-

intentionally kill Gerardo Luis Quintanilla while working in furtherance of a continuing criminal enterprise." That language charged Botello both as a principal and as an aider and abettor. *See Neal*, 951 F.2d at 633 ("Aiding and abetting is not a separate offense, but it is an alternative charge in every indictment, whether explicit or implicit.").

We also disagree with Botello's contention that he was unfairly surprised by the aiding and abetting instruction because the prosecution's theory of the case identified him strictly as the principal in the offense. According to Botello, the prosecutor alleged in his opening statement that Botello personally fired the shots that killed Quintanilla. However, because evidence introduced by the government tended to prove that Botello acted as an aider and abettor,[4] and because the indictment did not foreclose the possibility of conviction as an aider and abettor, Botello's counsel should have realized that an instruction on aiding and abetting was available to the prosecution. *See United States v. Gordon*, 812 F.2d 965, 969 (5th Cir.) ("Any early suggestion . . . that the government expected to prove that Woodcock was the actual gunman rather than only an aider and abettor did not unfairly

---

[4]    Botello does not dispute that evidence presented by the government supported a conviction for aiding and abetting. The evidence showed that Botello acquired the vehicle used in the murder, *see* Record on Appeal, vol. 23, at 4-165 to 4-168, 4-174 to 4-179, and helped to search for Quintanilla before he was killed. *See id.* vol. 24 at 5-42. Certain testimony tended to show that Botello was the gunman, *see id.; id.* at 5-180 to 5-190, but other evidence indicated that he was not. *See id.* at 5-182; *id.* vol. 25, at 6-4 to 6-9. Therefore, the jury could have found Botello guilty as an aider and abettor, rather than as the principal.

-5-

prejudice his defense."), *cert. denied,* 483 U.S. 1009, 107 S. Ct. 3238, 97 L. Ed. 2d 743 (1987). We agree with the district court's conclusion that Botello was not unfairly surprised by the aiding and abetting instruction, and therefore find no abuse of discretion.

**B**

Botello argues that the district court, at his second trial, erred by denying his motion for dismissal, which was premised on a claim of double jeopardy. We review de novo the district court's denial of a motion to dismiss on the ground of double jeopardy. *United States v. Vasquez-Rodriguez,* 978 F.2d 867, 870 (5th Cir. 1992); *United States v. Deshaw,* 974 F.2d 667, 669 (5th Cir. 1992).

At Botello's first trial, a court officer suspected that one of the jurors was smoking marijuana during recesses. The district court ordered the U.S. Marshal to observe the juror, but the Marshal confronted the juror with the suspicion that he had been smoking marijuana. Later it was learned that the suspected juror had told other jurors of his encounter with the U.S. Marshal. Botello moved for a mistrial, and the district court granted the motion. Prior to the second trial, Botello moved for dismissal on the grounds of double jeopardy, and the district court denied the motion.

"A defendant may . . . waive double jeopardy protection by consenting to a mistrial before a verdict is rendered. . . . [A] motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion

is necessitated by prosecutorial or judicial error." *United States v. Bauman*, 887 F.2d 546, 549 (5th Cir. 1989) (citations omitted), *quoted in United States v. Nichols*, 977 F.2d 972, 974 (5th Cir. 1992). "[O]nly where the governmental conduct in question is intended to `goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." *United States v. Weeks*, 870 F.2d 267, 269 (5th Cir.) (quoting *Oregon v. Kennedy*, 456 U.S. 667, 676, 102 S. Ct. 2083, 2088-89, 72 L. Ed. 2d 416 (1982)), *cert. denied,* 493 U.S. 827, 110 S. Ct. 92, 107 L. Ed. 2d 57 (1989). Botello does not allege, and nothing in the record suggests, that the Marshal confronted the juror, or was directed to do so by any representative of the government, in order to provoke a defense motion for mistrial.[5] As a result, Botello's double jeopardy argument is without merit.

## C

Botello argues that the district court committed reversible error by denying his motion for a continuance to locate and interrogate Eric Linares, who was suspected of committing the murder for which Botello was indicted.[6] Dr. Victor Leal, a member

---

[5] The district court recognized that the prosecutor had no knowledge of the incident until it was disclosed in court. *See* Record on Appeal, vol. 15, at 41-42. The record reveals that the incident was the result of a misunderstanding between the district court and the Marshal, and not of any effort to goad the defense into moving for mistrial. *See id.* at 45.

[6] Botello argues that his convictions for murder and money laundering should both be reversed on account of this alleged error. *See* Brief for Botello at 14. However, it appears that the continuance issue is relevant only to the murder conviction, since

of the Garcia-Abrego organization, reported to the government that Eric Linares, another member of the organization, had admitted killing Quintanilla. Dr. Leal also informed the government that he was unwilling to testify in court, and that he would invoke the Fifth Amendment if called to do so. Upon learning of Linares's alleged confession, Botello filed a motion for continuance, to gain additional time to locate Linares and investigate his statements. The motion stated that Linares's whereabouts were unknown. Apparently Linares resided in Mexico))beyond the subpoena power of the district court))but occasionally traveled to Brownsville. The district court denied Botello's motion for continuance.

The denial of a motion for a continuance is reviewed for abuse of discretion. *United States v. Walker*, 621 F.2d 163, 168 (5th Cir. 1980), *cert. denied,* 450 U.S. 1000, 101 S. Ct. 1707, 68 L. Ed. 2d 202 (1981); *see also United States v. Khan*, 728 F.2d 676, 681 (5th Cir. 1984) (reviewing denial of motion for continuance for abuse of discretion). When moving for a continuance on the grounds of the unavailability of a witness, the movant must show:

> [that] due diligence has been exercised to obtain the attendance of the witness, that substantial favorable evidence would be tendered by the witness, that the witness is available and willing to testify, and that the denial of the continuance would materially prejudice the defendant.

*Walker*, 621 F.2d at 168 (quoting *United States v. Miller*, 513 F.2d 791, 793 (5th Cir. 1975)); *see also United States v. Siegel*, 587 F.2d 721, 728 (5th Cir. 1979). There is no reason to believe that

the exculpatory evidence which Botello hoped to acquire during the continuance was pertinent to the murder charge only.

Linares would have testified that he killed Quintanilla, thereby incriminating himself. *See United States v. Sawyers*, 902 F.2d 1217, 1219 (6th Cir. 1990) (affirming denial of continuance partly because "the defendant was unable to indicate whether the witness, who would have incriminated himself by testifying, would have been willing to testify"), *cert. denied,* ___ U.S. ___, 111 S. Ct. 2895, 115 L. Ed. 2d 1059 (1991); *Khan*, 728 F.2d at 681 (In deciding whether a continuance is required, "[t]he showing of willingness [to testify] is essential to insure that judicial resources are not wasted."). Botello failed to show that Linares was willing to testify.

Botello also failed to show that Linares was available to testify. Linares apparently lived beyond the subpoena power of the court, and his whereabouts were unknown. Furthermore, Dr. Leal, the person who supposedly had information about Linares, stated that he would not testify in court. As a result, Botello failed to show that Linares could be located or compelled to appear. *See Fitzpatrick v. Procunier*, 750 F.2d 473, 477 (5th Cir. 1985) (upholding denial of state prisoner's habeas petition, because state prisoner, in moving for continuance, failed to show that he knew where the prospective witness was, or that he could locate that witness) (applying standard of review more stringent than abuse of discretion); *see also United States v. Costello*, 760 F.2d 1123, 1127 (11th Cir. 1985) (affirming denial of continuance partly because "[n]o one knew [the] exact whereabouts [of the prospective

witness]" and "there was no positive indication that [he] could have been located and secured within a reasonable time").

Because Botello did not show either that Linares could be located, or that his attendance could be procured, or that he would be willing to testify if located, Botello failed to satisfy the requirements for obtaining a continuance on account of the absence of a witness. Therefore, the district court did not abuse its discretion by denying Botello's motion for continuance.

**D**

Botello claims that the district court erred in denying his motion to suppress the $148,000 in currency found in his car, which led to his conviction for money laundering. Botello argues that he did not consent to the search which revealed the currency, and since there was no probable cause for the search, it violated his rights under the Fourth Amendment.

Officer Eddie Perez conducted the search in question, and testified regarding the circumstances of the search at the suppression hearing. Perez stopped Botello's vehicle for speeding. Because Botello seemed very nervous, Perez asked him for permission to search the car, and Botello said "yes." *See* Record on Appeal, vol. 6, at 31. Botello also executed a written consent form after Perez read it to him in Spanish. *See id*. at 34-36. At the suppression hearing Perez was unable to produce the form, but another officer testified that he saw it on the day of the search, and that it had been signed by Botello. *See id*. at 62. Perez also informed Botello that he did not have to consent to the search, to

which Botello responded that he had nothing to hide. *See id.* at 32. Botello testified at the suppression hearing that he did not give consent to search the car. *See id.* vol. 5, at 2. Perez searched the car and found $148,000 in cash. Botello moved to suppress the currency, and the district court denied the motion. In a written order the district court found "by clear and convincing evidence that the search of [Botello's] automobile was conducted with [his] consent." *See id.* vol. 3, at 283.

"[A] finding of consent [to search] may be overturned on appeal only if found to be clearly erroneous." *United States v. Coburn*, 876 F.2d 372, 374 (5th Cir. 1989). "We will reject the trial court's finding only if, after giving due regard to the opportunity of the trial court to judge the credibility of the witnesses, we are left with the `definite and firm conviction that a mistake has been committed.'" *Id*. (quoting *United States v. Sutton*, 850 F.2d 1083, 1085 (5th Cir. 1988)). In challenging the district court's express finding of consent, Botello argues only that the written consent form was not produced at the suppression hearing. Because the consent form was not produced at the suppression hearing, the district court's finding of consent turned on its assessment of Botello's credibility and that of the officers, based on their in-court demeanor. We will not second guess the district court's credibility judgment. *See id.*

Therefore, the finding of consent was not clearly erroneous, and the district court properly denied Botello's motion to suppress.[7]

## III

For the foregoing reasons, we AFFIRM.

---

[7] Botello also suggests that his consent was not voluntary because it was given in acquiescence to a claim of lawful authority. *See* Brief for Botello at 16. Botello does not allege any specific facts to support this claim. Furthermore, this claim is directly contradicted by Officer Perez's testimony that he told Botello that he did not have to consent to the search.