

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-405-CR

TONY ANDREW TAYLOR                                                      APPELLANT

V.

THE STATE OF TEXAS                                                              STATE

------------

FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

In three points, Appellant Tony Andrew Taylor appeals his conviction for aggravated robbery causing bodily injury to an elderly or disabled person. We affirm.

---

[1] *See* Tex. R. App. P. 47.4.

## II. Factual and Procedural Background

On March 21, 2008, sixty-eight-year-old Caroline Blevins went to Wal-Mart to purchase Easter baskets for her grandchildren. After paying for her items, she placed her purchases, along with her purse, into a shopping cart and pushed the cart to her vehicle in the parking lot. As she was loading the Easter baskets into the trunk of her car, Blevins noticed that a red Blazer had stopped near her cart. She heard somebody in the Blazer yell, "There it is," and then saw a woman jump out of the Blazer and grab her purse — the woman was later identified as Luella Ingram. A tug-of-war ensued, Ingram jerked the purse out of Blevins's hands, causing pain in Blevins's shoulder and neck. Blevins then heard someone from the front seat of the Blazer yell, "Let's go!" Ingram jumped into the back of the Blazer, and the Blazer took off.

Blevins finished loading her purchases into her vehicle, wrote down part of the Blazer's license plate number, and drove off after the Blazer. She located the Blazer stopped under a bridge not too far from Wal-Mart. Blevins parked her car in front of the Blazer so that it would not be able to go anywhere, then got out of her car and approached the Blazer. Blevins opened the back door to confront Ingram. Ingram told her,"Get out of here," and then started to hit Blevins. Blevins located her purse underneath a coat on the floorboard.

2

Taylor, the Blazer's owner and driver, got out of the car and said, "What's happening?" and "I don't know anything about it." After retrieving her purse, Blevins returned to her vehicle, wrote down the Blazer's complete license plate number, and discovered that the cash she had had in her purse was missing. Blevins then drove back to Wal-Mart and reported the robbery to the off-duty police officer working security.

On April 30, 2008, the State indicted Taylor for the offense of aggravated robbery. The indictment stated,

> [Taylor did] then and there intentionally or knowingly, while in the course of committing theft of property and with intent to obtain or maintain control of said property, cause bodily injury to Caroline Blevins, a person 65 years of age or older or a disabled person, by jerking her arm with Defendant's hand.

During trial, in addition to Blevins's testimony, the State introduced a surveillance video of the parking lot at the time of the robbery and an audio recording of an interview that occurred between Taylor and Detective Jeremy Rhoden. On the surveillance video, Taylor's red Blazer is seen stopping near Blevins's vehicle. The video shows a person jumping out of the Blazer and an altercation taking place between that person and Blevins. The person is then seen getting back into the Blazer, and the Blazer is seen leaving the parking lot. The time code on the video shows that the whole incident took less than twenty seconds.

3

In the audio recording, Taylor began the interview by telling Detective Rhoden that he owned the red Blazer and that it had been stopped under the bridge because it had run out of gas. He went on to state that he had not been in the Wal-Mart parking lot and that Ingram had not been in his vehicle. When told about the parking lot surveillance video, Taylor recanted his statements and admitted that he had been in the Wal-Mart parking lot and that Ingram had also been in the vehicle with him. He went on to state that he had not known that Ingram was going to grab Blevins's purse and that, when she had grabbed the purse, he had told her to give it back. When asked by the detective why he had driven off and not waited for Ingram to return the purse, Taylor replied, "I panicked."

After a trial on the merits, Taylor made the following motion outside the presence of the jury:

> Comes now Defendant, Tony Andrew Taylor, and makes its motion for instructed verdict of not guilty, shows as follows: Proof at the trial shows variance with the indictment in that there is no evidence that Tony Taylor jerked Ms. Blevins's arms with Defendant's hand. We would ask the Court to instruct the jury to find the Defendant not guilty.

The trial court denied Taylor's motion "based upon the law of parties."

A charge conference took place following the denial of Taylor's motion. During the conference, the trial court agreed that the jury charge should not

4

allow for conviction as a principal "since there really isn't any evidence that he did the jerking" but instead should allow for conviction as a party. Taylor objected to the charge being submitted under the law of parties on the ground that he had not been charged as a party in the indictment. The next day, the trial court provided a new charge to which Taylor made the following objection:

> Comes now Defendant, Tony Andrew Taylor, makes this additional objection to the Court's Charge. Defendant objects to page three, the application paragraph which authorizes a conviction of Mr. Taylor for committing the offense by jerking her, Caroline Blevins's, arm with Luella Ingram's hand and that—especially the part that says "Luella Ingram."

> It's Defendant's position that that should be Defendant's hand as the application allows the jury to convict on a theory not alleged in the indictment.

The trial court overruled Taylor's objection on the basis that case law "allows parties theory to be charged and, more specifically, requires it to be charged and applied to the facts of the case." After deliberations, the jury found Taylor guilty of the offense of aggravated robbery causing bodily injury to an elderly or disabled person, and the trial court sentenced him to thirty-five years' confinement. This appeal followed.

5

### III. Legal Sufficiency

In his first and second points, Taylor asserts that the evidence is legally insufficient to support a finding of guilt under both the federal and state due process standards.

### A. Standards of Review

We review a federal due process challenge to the legal sufficiency of the evidence by determining whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In our review, we measure the evidentiary sufficiency against the "substantive elements of the offense as defined by state law." *Fuller v. State*, 73 S.W.3d 250, 252 (Tex. Crim. App. 2002) (quoting *Jackson*, 443 U.S. at 324 n.16; 99 S. Ct. at 2792). However, when legal sufficiency is challenged under state law, we measure the evidentiary sufficiency against "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Grotti v. State*, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *see Gollihar v. State*, 46 S.W.3d 243, 245 (Tex. Crim. App. 2001).

**B. State Due Process**

In his second point, Taylor asserts that the evidence is legally insufficient to support a finding of guilty under state law. Specifically, Taylor argues that there is a material variance between the indictment, which states "Defendant's hand," and the jury charge, which states "Luella Ingram's hand," and that if the trial court had given a hypothetically correct charge, as authorized by the indictment, then the evidence was insufficient to convict him.

### 1. Variance

A variance occurs when there is a discrepancy between the allegations in the charging instrument and the proof at trial. *Gollihar*, 46 S.W.3d at 246. In a variance situation, the State proves the defendant guilty of a crime but proves the crime's commission in a manner that differs from the allegations in the charging instrument. *Id*. Not all variances are fatal; a variance between the wording of an indictment and the evidence presented at trial is fatal only if it is material and prejudices the defendant's substantial rights. *Id.* at 257; *see also Fuller*, 73 S.W.3d at 253.

In reviewing the materiality of such a variance, we must determine whether the variance deprived the defendant of notice of the charges and whether the variance subjects the defendant to the risk of being prosecuted later for the same crime. *Fuller*, 73 S.W.3d at 253; *Gollihar*, 46 S.W.3d at

7

257. Allegations giving rise to immaterial variances may be disregarded in the hypothetically correct charge, but allegations giving rise to material variances must be included. *Gollihar*, 46 S.W.3d at 257.

Here, the variance occurs between the wording of the indictment, which charges Taylor as a principal, and the wording of the jury charge, which charges him as a party. Under Texas law, however, a party to an offense may be charged with the offense without alleging the facts that make the defendant a party to the offense and criminally responsible for the conduct of another. *Crank v. State*, 761 S.W.2d 328, 351 (Tex. Crim. App. 1988), *cert. denied*, 493 U.S. 874, 110 S. Ct. 209 (1989), *overruled on other grounds by Alford v. State*, 866 S.W.2d 619, 624 n.8 (Tex. Crim. App. 1993); *Pitts v. State*, 569 S.W.2d 898, 900 (Tex. Crim. App. 1978). The penal code eliminates the old distinctions between principals and accomplices and the attendant complexities in drafting indictments. *Pitts*, 569 S.W.2d at 900; *see* Tex. Penal Code Ann. § 7.01(c) (Vernon 2003). Taylor, is charged with constructive knowledge of the law. *See Crain v. State*, 69 Tex. Crim. 55, 57, 153 S.W. 155, 155–56 (1913); Tex. Penal Code Ann. §§ 1.02, 8.03(a) (Vernon 2003); *see also Wilson v. State*, 825 S.W.2d 155, 159 (Tex. App.—Dallas 1992, pet. ref'd) (constructive knowledge of criminal law extends to procedural laws and case law).

Therefore, because the law allows Taylor to be charged with an offense without alleging that Taylor was criminally responsible for the conduct of another, Taylor was on notice that the offense charged in the indictment could involve culpability as a primary actor or as one criminally responsible for the conduct of another.  *See Pitts*, 569 S.W.2d at 900; *see also Reid v. State*, No. 05-90-01049-CR, 1991 WL 218766, at *2 (Tex. App.—Dallas Oct. 25, 1991, no pet.) (not designated for publication).  Accordingly, the indictment provided sufficient notice to Taylor to allow him to prepare for his defense.  Furthermore, since the entire record is reviewed in the case of a claim of double jeopardy, there is no risk that Taylor will be prosecuted for the same offense at a later time.  *See U.S. v. Apodaca*, 843 F.2d 421, 430 n.3 (10th Cir.) (noting that entire record, not just indictment, may be considered in determining whether double jeopardy precludes subsequent prosecution), *cert. denied*, 488 U.S. 932 (1988).  Thus, we conclude that the variance is immaterial and may be disregarded in the hypothetically correct jury charge.  *See Gollihar*, 46 S.W.3d at 257.

## 2.  Hypothetically Correct Jury Charge

To determine whether the evidence is legally sufficient to uphold Taylor's conviction, we measure the sufficiency of the evidence by the elements of the offense as defined by the hypothetically correct jury charge for the case.  *Malik*,

9

953 S.W.2d at 240; *Ortiz v. State*, 993 S.W.2d 892, 895 (Tex. App.—Fort Worth 1999, no pet.). Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Gollihar*, 46 S.W.3d at 253; *Malik*, 953 S.W.2d at 240. The law as authorized by the indictment means the statutory elements of the charged offense as modified by the charging instrument. *See Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000).

The indictment in this case alleged that Taylor committed the offense of aggravated robbery by intentionally or knowingly causing bodily injury to Blevins, a person sixty-five years of age or older, while in the course of committing theft. Having alleged bodily injury to a person sixty-five years of age or older, the State had to prove bodily injury to a person sixty-five years of age or older. *See Rivera v. State*, No. 02-05-00056-CR, 2006 WL 743030, at *5 (Tex. App.—Fort Worth Mar. 23, 2006, pet. ref'd) (mem. op., not designated for publication). To conform to the indictment, therefore, a hypothetically correct charge would require the State to prove, beyond a reasonable doubt, either that Taylor intentionally or knowingly caused bodily injury to Blevins in the course of committing theft, *or* because the State relied on section 7.02(a)(2) of the penal code, that Taylor was criminally responsible

10

as a party to another person intentionally or knowingly causing bodily injury to Blevins while in the course of committing a theft. That is, by acting with intent to promote or assist the commission of the offense, Taylor solicited, encouraged, directed, aided, or attempted to aid the other person to commit the offense. *See* Tex. Penal Code Ann. §§ 7.01(a)(2), 7.02(a)(2) (Vernon 2003); *Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005).

### a. Ingram as the Primary Actor

To prove the offense of aggravated robbery, the State had to prove that a person, in the course of committing theft and with intent to obtain or maintain control of the property, intentionally or knowingly caused bodily injury to another person sixty-five years of age or older. Tex. Penal Code Ann. §§ 29.02–.03 (Vernon 2003). The jury charge included the following definitions: (1) "intentionally"—a person "acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result[,]" (2) "knowingly"—a person "acts knowingly, or with knowledge, with respect to the result of his conduct when he is aware that his conduct is reasonably certain to cause the result[,]" and (3) "bodily injury"—is "physical pain, illness, or any impairment of physical condition."

Here, the record reflects that Ingram grabbed Blevins's purse, engaged in a tug-of-war with Blevins over the purse, jerked the purse out of Blevins's

hands, and caused pain to Blevins's shoulder and neck and that Blevins was sixty-eight years old at the time of the incident. Based on the evidence in the record, and in accordance with the legal sufficiency standard of review, we hold that a rational jury could find, beyond a reasonable doubt, that Ingram intentionally or knowingly caused bodily injury to Blevins, a person sixty-five years or older, while trying to obtain or maintain control of Blevins's purse. Therefore, the evidence is legally sufficient to establish that Ingram, as primary actor, committed aggravated robbery as alleged in the indictment.

**b. Taylor as Party to Aggravated Robbery**

Having concluded that Ingram was the primary actor in the aggravated robbery against Blevins, we next assess the legal sufficiency of the evidence to establish that Taylor was a party to the aggravated robbery. To establish liability as a party, it must be shown that the accused harbored the specific intent to promote or assist the commission of the offense, i.e., aggravated robbery. *Christensen v. State*, 240 S.W.3d 25, 31 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd); *Pesina v. State*, 949 S.W.2d 374, 382 (Tex. App.—San Antonio 1997, no pet.). The evidence must show that the parties were acting together to accomplish their common purpose. *Wygal v. State*, 555 S.W.2d 465, 469 (Tex. Crim. App. 1977). The agreement to accomplish a common purpose, if any, must be made before or contemporaneous with the

12

criminal event, but in determining whether one has participated in an offense, the court may examine events, before, during, and after the commission of the offense. *Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006); *Miller v. State*, 83 S.W.3d 308, 314 (Tex. App.—Austin 2002, pet. ref'd).

While an agreement of the parties to act together in common design can seldom be proved by direct evidence, reliance may be had on the actions of the parties showing by direct or circumstantial evidence an understanding and common design to do a certain act. *Burdine v. State*, 719 S.W.2d 309, 315 (Tex. Crim. App. 1986); *Pesina*, 949 S.W.2d at 383. In fact, circumstantial evidence may be sufficient alone to establish one as a party to an offense. *Powell*, 194 S.W.3d at 506; *Wygal*, 555 S.W.2d at 469. The State must show more than mere presence to establish participation in a criminal offense. *Valdez v. State*, 623 S.W.2d 317, 321 (Tex. Crim. App. 1981) (op. on reh'g); *Pesina*, 949 S.W.2d at 383. Evidence is sufficient, however, to convict under the law of parties where the accused is physically present at the commission of the offense and encourages its commission by words or other agreement. *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994).

Here, the evidence showed that Taylor drove Ingram to the scene of the aggravated robbery. Blevins heard someone in the Blazer yell, "There it is," right before Ingram jumped out of the Blazer and grabbed Blevins's purse.

13

Blevins then heard someone in the Blazer yell, "Let's go!" Ingram jumped back into the Blazer with Blevins's purse, and Taylor drove directly out of the parking lot. The whole incident took less than twenty seconds.

A rational trier of fact could have found, from the sum total of this circumstantial evidence, that Taylor acted with intent to promote or assist Ingram in the commission of the offense of aggravated robbery by aiding or attempting to aid Ingram in committing that offense. *See Escobar v. State*, 28 S.W.3d 767, 774 (Tex. App.—Corpus Christi 2000, pet. ref'd); *Johnson v. State*, 6 S.W.3d 709, 711 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd); *Brewer v. State*, 852 S.W.2d 643, 647 (Tex. App.—Dallas 1993, pet. ref'd); *Webber v. State*, 757 S.W.2d 51, 53–55 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd). Therefore, we hold that the evidence is legally sufficient to establish that Taylor knowingly and intentionally aided and assisted Ingram to commit aggravated robbery against Blevins, as charged in the indictment. Accordingly, we overrule Taylor's second point.

## C. Federal Due Process

In his first point, Taylor asserts that the evidence is legally insufficient to support a finding of guilty under federal law. Specifically, Taylor argues that (1) because the indictment charged him as a principal, he could not be

14

convicted as a party and (2) the evidence was insufficient to support his being convicted of the "means charged" — that is, as a principal.

In support of his first argument, Taylor directs our attention to *Jackson v. Virginia*, in which the U.S. Supreme Court stated, "It is axiomatic that a conviction upon a charge not made or upon a charge not tried constitutes a denial of due process." 443 U.S. at 314, 99 S. Ct. at 2786. Taylor claims that because he was charged as a principal, his conviction under the law of parties denied him due process. However, federal courts have consistently held that "one who has been indicted as a principal may, on proper instructions, be convicted on evidence showing only that he aided and abetted the commission of the offense." *U.S. v. Robles-Pantoja*, 887 F.2d 1250, 1255 (5th Cir. 1989); *U.S. v. Gordon*, 812 F.2d 965, 969 (5th Cir.), *cert. denied*, 483 U.S. 1009 (1987); *U.S. v. Oquendo*, 505 F.2d 1307, 1310 n.1 (5th Cir. 1975). Here, the trial court properly instructed the jury on the law of parties. *See Brown v. Collins*, 937 F.2d 175, 182 (5th Cir. 1991) (holding that evidence was sufficient to prove substantive elements of aggravated robbery under law of parties as charged generally in court's instructions even though evidence did not conform strictly to theory of culpability as alleged in indictment and charged in application paragraphs of court's instructions). Therefore, Taylor's first argument is without merit.

As to Taylor's second argument, because the jury charge under the law of parties does not violate his rights to due process and because we have already concluded that the evidence is legally sufficient to support his conviction under the law of parties, we need not also address whether the evidence was legally sufficient to support his being convicted as a principal. *See* Tex. R. App. P. 47.1. Accordingly, we overrule Taylor's first point.

## IV. Insufficient Notice

In his third and final point, Taylor asserts that the indictment provided "insufficient notice of the charges against him." Specifically, Taylor complains that because the indictment charged him as a principal, he did not have notice that he would be charged as a party. However, we have already addressed this issue in our variance discussion and concluded that the indictment provided sufficient notice to Taylor. Therefore, we overrule Taylor's third point.

## V. Conclusion

Having overruled all of Taylor's points, we affirm the trial court's judgment.

BOB MCCOY
JUSTICE

PANEL: LIVINGSTON, DAUPHINOT, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: November 5, 2009