**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**
No. 96-40873

UNITED STATES OF AMERICA,

                    Plaintiff - Appellee,

versus

DAVID SORRELLS,

                    Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

July 22, 1998

Before GARWOOD, DAVIS, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

A jury convicted David Sorrells ("Sorrells") of using a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1). We affirmed his conviction on direct appeal and on Sorrells' first motion to vacate his sentence under 28 U.S.C. § 2255. He now appeals from the district court's denial of his second § 2255 motion to vacate his § 924(c)(1) conviction. We affirm.

I

The facts in this case are relatively straightforward. Both

parties agree that, viewed in the light most favorable to the verdict, the relevant facts are as follows: In 1989, Sorrells' adopted son, Mark Sorrells ("Mark"), contacted Victor Ayala ("Ayala") and asked him where he could get chemicals to manufacture methamphetamine. Mark told Ayala that he did not have money to purchase the chemicals, but that he could use a deed to his father's house as collateral. Unbeknownst to Mark, Ayala was working as a paid informant for Gene Tandy ("Tandy") of the Texas Department of Public Safety. After Ayala informed Tandy of Mark's request, Tandy told Drug Enforcement Administration ("DEA") Agent James Palestino ("Palestino") about Ayala's contact with Mark. Palestino instructed Tandy to set up a meeting with Mark.

At the meeting between Palestino and Mark, Palestino posed as an employee of a chemical store with access to the chemicals needed to make methamphetamine. Mark stated that he was low on cash, but he offered to provide the deed to Sorrells' house as collateral for the chemicals. Mark also gave Palestino a written list of the chemicals he needed and a telephone number where he could be reached. Mark said that after he manufactured the methamphetamine he would pay Palestino $2,000 and give him a pound of the finished methamphetamine. Palestino told Mark that he wanted to meet with Sorrells to assure himself that Sorrells was aware of the details of the transaction. Ayala later telephoned Sorrells and asked him if he was aware that the deed to his house was being used as collateral to purchase methamphetamine; Sorrells replied that he

-2-

was.

Shortly after their first meeting, Palestino called Mark and recorded their conversation. Palestino told Mark that he was uncomfortable about the method of payment and asked to speak to Sorrells to verify that Sorrells knew the purpose for which the deed to his house was going to be used. Mark told Palestino that Sorrells knew about the plans and that there would be no problem arranging a meeting with Sorrells. The meeting with Sorrells took place on the following day at Sorrells' home. Palestino was wearing a body microphone and waited in the car while Tandy and Ayala went inside. Mark came out and showed Palestino the deed to Sorrells' house. Sorrells then came out of the house and assured the officers that they could use the deed as collateral for the chemicals. Sorrells stood by as Palestino and Mark discussed financial arrangements should something go awry with Mark's "cook." Sorrells also commented to Palestino that this was not Mark's "first time."

After the meeting, the officers decided to provide Mark with the chemicals. Ayala arranged for the parties to meet at a mall in Galveston. Ayala called Sorrells at his home and told him that he and Tandy were in town with the chemicals and were waiting for Mark at the mall. Sorrells eventually relayed the message to Mark, and Mark subsequently arrived at the mall driving a van. After they loaded the chemicals into Mark's van, Ayala and Mark drove off in the van, with Ayala wearing a body microphone. Ayala and Mark then

went to a real estate office, and Mark picked up a key to a beach house that Sorrells had rented for the processing of the methamphetamine.

After taking the chemicals to the beach house, Mark began "cooking" the chemicals. Mark also sent Ayala to get a gun and a box of bullets from inside the van. Mark loaded the gun and toyed with it as he began to process the chemicals. Ayala convinced Mark to get something to eat, and when they left, Mark took the gun with him. When they returned, Mark took the gun out and told Ayala that "if anybody knocks on the door, I'm going to shoot through it, I don't play funny business." Frightened for his own safety, Ayala surreptitiously left the house in search of a police officer. He could not find an officer, and when he returned to the beach house, Mark was waiting outside with a crowbar. Mark told Ayala to get back inside the house and not to leave again. When the chemicals began to give off a strong odor, Ayala talked Mark into leaving the house to purchase gas masks from Sears. They later left the house again and the police stopped them as they returned.

The officers arrested Mark and searched the beach house, finding a functioning methamphetamine laboratory, a loaded gun, and a gas mask lying on the kitchen counter. Thereafter, the officers sent Ayala to Sorrells' home (which was approximately sixteen miles from the beach house) to speak with Sorrells. Ayala told Sorrells that the reason he left the beach house was that there was a bad odor. When he mentioned to Sorrells that the odor was strong,

Sorrells stated: "I know, I know." Sorrells indicated that he expected to profit financially from the venture and that he wanted to launder the money to an island and bring it back in small amounts. Sorrells also mentioned that he paid for the rental of the beach house where Mark cooked the methamphetamine.

In reference to Mark and Sorrells' plan to conduct another drug deal with Ayala and Palestino, Sorrells told Ayala he had some information for their next deal. He wrote down the address and telephone number of a real estate agent and instructed Ayala to give it to Mark, explaining that the next deal would take place at that location. Ayala asked Sorrells if he realized that Mark had a gun with him at the beach house, and Sorrells told him "yes, I know, I know." The police arrested Sorrells at his home shortly thereafter. During the arrest, Sorrells told DEA Special Agent Dickmond Rice that he owned a gun and that he had given it to Mark. Sorrells later admitted that the gun recovered from the beach house was similar to the gun that he owned.

The government charged Sorrells in a superseding indictment, along with Mark, with conspiracy to manufacture in excess of 10 grams of methamphetamine (Count 1), with aiding and abetting an attempt to manufacture methamphetamine (Count 2), and with using and carrying a firearm in relation to a drug-trafficking offense in violation of 18 U.S.C. § 924(c)(1) (Count 4). Following a jury trial, the jury convicted Sorrells on all counts. The district court imposed a sentence of concurrent 78-month terms of

incarceration on each count and a mandatory consecutive 60-month term of incarceration for the § 924(c)(1) violation.  We affirmed Sorrells' conviction in an unpublished opinion, rejecting his sole claim on appeal that his conviction be reversed because the original record had been lost.  *See United States v. Sorrells*, No. 90-2361, slip op. at 3-5 (5th Cir. Sept. 24, 1992).  In 1993, Sorrells filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255.  Sorrells raised a litany of issues, including a claim that there was insufficient evidence to prove that he knowingly violated § 924(c).  The district court denied relief, and we affirmed in an unpublished opinion.  *See United States v. Sorrells*, No. 93-7737, slip op. at 1 (5th Cir. Jan. 25, 1995).

Sorrells filed the instant § 2255 motion on April 1, 1996, challenging only his conviction on the 18 U.S.C. § 924(c)(1) charge in light of the Supreme Court's decision in *United States v. Bailey*, 516 U.S. 137, 116 S. Ct. 501, 133 L. Ed. 2d 472 (1995). The United States responded that Sorrells' successive § 2255 motion should be denied as an abuse of the writ, and alternatively, that Sorrells' motion should be denied on the merits.  The district court did not address the government's abuse of the writ argument, but denied Sorrells' § 2255 motion on the merits instead.  Sorrells filed a timely notice of appeal from this decision.  Sorrells subsequently filed with the district court a motion to proceed *in forma pauperis* on appeal.  The district court denied this motion

and certified that Sorrells' appeal was not taken in good faith. Sorrells filed a separate notice of appeal from this order.[1]

II

Because Sorrells filed the instant § 2255 petition before the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), we consider his petition under our pre-AEDPA standards of review,[2] and no certificate of appealability is necessary to vest jurisdiction in this Court. *See United States v. Carter*, 117 F.3d 262, 264 (5th Cir. 1997); *United States v. Rocha*, 109 F.3d 225, 228-29 (5th Cir. 1997). Sorrells challenges only his conviction for using a firearm during a drug trafficking crime in violation of § 924(c)(1), claiming that there was insufficient evidence to support his conviction under the Supreme Court's definition of "use" in *Bailey*.

---

[1] As a preliminary matter, we reject Sorrells' argument that the district court erred in denying his motion to proceed *in forma pauperis* on appeal. Sorrells failed to attach a copy of an affidavit showing his inability to pay fees and costs and failed to file a motion in this Court. Therefore, he failed to comply with the strictures of FED. R. APP. P. 24 for proceeding *in forma pauperis* on appeal, and his request to do so is hereby denied.

[2] Several recent decisions have considered whether *Bailey* claims can be brought in successive § 2255 motions under AEDPA. *See Triestman v. United States*, 124 F.3d 361, 368-80 (2d Cir. 1997); *In re Hanserd*, 123 F.3d 922, 928-32 (6th Cir. 1997); *In re Dorsainvil*, 119 F.3d 245, 248-49 (3d Cir. 1997). Because AEDPA limits successive § 2255 motions to claims based on "a new rule of constitutional law" or "newly discovered evidence," these courts have had to address the difficult questions surrounding the availability of § 2255 or § 2241 relief for such claims under AEDPA. Because Sorrells' § 2255 motion was filed before the effective date of AEDPA, we express no opinion on these questions.

-7-

In *Bailey*, the Supreme Court clarified that a conviction for "use" of a firearm under § 924(c)(1) requires the government to show "active employment of the firearm" including "brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire, a firearm." *Bailey*, 516 U.S. at 148, 116 S. Ct. at 508. The Court in *Bailey* concluded that "a defendant cannot be charged under § 924(c)(1) merely for storing a weapon near drugs or drug proceeds," or for "placement of a firearm to provide a sense of security or to embolden." *Id.* The government assumes here that the district court's § 924(c)(1) instructions failed to comply with the *Bailey* Court's definition of "use," but argues, nonetheless, that there was sufficient evidence to convict Sorrells of "aiding and abetting" the use of a firearm during a drug trafficking crime, and that in any event, Sorrells cannot demonstrate that the alleged error resulted in a complete miscarriage of justice. Sorrells argues that there was insufficient evidence to convict him of personally "using" the firearm, that he was not charged with aiding and abetting the use of a firearm, and that there was insufficient evidence to convict him of aiding and abetting Mark's "use" of the firearm.

III

We first address the procedural hurdles to considering the merits of Sorrells' *Bailey* claim, as well as the proper standard of review for doing so. We have recently joined most courts of appeal

-8-

in holding that *Bailey* applies retroactively to cases pending on collateral review. *See United States v. McPhail*, 112 F.3d 197, 199 (5th Cir. 1997); *see also Triestman v. United States*, 124 F.3d 361, 368 & n.7 (2d Cir. 1997) (collecting cases); *In re Hanserd*, 123 F.3d 922, 928-32 (6th Cir. 1997); *Stanback v. United States*, 113 F.3d 651, 654-55 (7th Cir. 1997); *United States v. Barnhardt*, 93 F.3d 706, 708-09 (10th Cir. 1996). Although *Bailey* itself is a non-constitutional case involving the statutory interpretation of § 924(c)(1), we have held that petitioners asserting that a § 924(c)(1) conviction is invalid in light of *Bailey* can properly bring their claims in a § 2255 motion. *See United States v. Gobert*, 139 F.3d 436, 438-39 (5th Cir. 1998) ("Even though *Bailey* itself is a statutory, non-constitutional case, it does not necessarily follow that a prisoner's post-*Bailey* petition for collateral relief sounds in statutory, non-constitutional law."); *see also Carter*, 117 F.3d at 264-65 (granting § 2255 motion and vacating § 924(c)(1) conviction because there was no factual basis to support guilty plea for "use" of a firearm in relation to a drug trafficking offense); *McPhail*, 112 F.3d at 199-200 (granting § 2255 motion and vacating § 924(c)(1) conviction because, in light of *Bailey*, conviction "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings [and] the appellant shows clear or obvious error that affects his substantial rights").

The government correctly notes, however, that Sorrells failed

to object to the jury instructions defining "use" of a firearm under § 924(c)(1), or to challenge those instructions on direct appeal. It is well settled that where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in a § 2255 motion only if the petitioner can first demonstrate either (1) cause and prejudice, or (2) that he is "actually innocent" of the crime for which he was convicted.[3] *See Bousley v. United States*, ___ U.S. ___, ___, 118 S. Ct. 1604, 1611, ___ L. Ed. 2d ___ (May 18, 1998); *Murray v. Carrier*, 477 U.S. 478, 485, 496, 106 S. Ct. 2639, 2643-44, 2649-50, 91 L. Ed. 2d 397 (1986); *United States v. Logan*, 135 F.3d 353, 355 (5th Cir. 1998). Because Sorrells did not challenge the § 924(c)(1) instructions at trial or on direct appeal, we apply this standard of review here.

---

[3] Because this is Sorrells' second § 2255 motion, he also has to overcome the abuse of the writ hurdle. We need not, however, separately consider this issue because we apply the functionally identical standard for determining whether a successive § 2255 motion constitutes an "abuse of the writ" under pre-AEDPA standards. *See, e.g., McCleskey v. Zant*, 499 U.S. 467, 494-95, 111 S. Ct. 1454, 1470-71, 113 L. Ed. 2d 517 (1991) (holding that there is no abuse of the writ where the petitioner can demonstrate either (1) cause and prejudice, or (2) that the failure to consider the issue would result in a "fundamental miscarriage of justice"); *United States v. Flores*, 981 F.2d 231, 234 (5th Cir. 1993) (extending the *McCleskey* standard to § 2255 motions). The "actually innocent" standard is the same as the "fundamental miscarriage of justice" standard, which applies "'when a constitutional violation probably has caused the conviction of one innocent of the crime.'" *Rodriguez v. Johnson*, 104 F.3d 694, 697 (5th Cir.) (quoting *McCleskey*, 499 U.S. at 494, 111 S. Ct. at 1470), *cert. denied*, 117 S. Ct. 2438 (1997). Therefore, the fact that this is Sorrells' second § 2255 motion does not affect our standard of review. *See infra* note 5.

Before the Supreme Court's recent decision in *Bousley*, applying the "cause and prejudice" standard to *Bailey* claims raised in § 2255 motions was relatively straightforward. We had joined every court of appeals except the Eighth Circuit in concluding that a petitioner bringing a post-*Bailey* challenge to a pre-*Bailey* conviction could show "cause" for failing to raise such a claim on direct review. *See Logan*, 135 F.3d at 355 ("Applying [the two-part cause and prejudice test], we find that [the defendant] has shown adequate cause for his failure to raise earlier the present issue because the *Bailey* decision had not been rendered at the time of his trial or appeal."); *Rocha*, 109 F.3d at 229 ("Rocha, of course, could hardly be expected to have raised a *Bailey* claim before *Bailey* was decided . . . ."); *see also Triestman*, 124 F.3d at 368 n.6 & 8 (collecting cases); *Stanback*, 113 F.3d at 654-55 & n.2 (collecting cases). Thus, before *Bousley*, when reviewing a § 2255 motion raising a *Bailey* claim when there had been no objection below, we would proceed to the "prejudice" prong to decide whether the petitioner could "demonstrate that, but for the alleged error, he *might not* have been convicted." *Logan*, 135 F.3d at 355 (emphasis added); *see also United States v. Guerra*, 94 F.3d 989, 994 (5th Cir. 1996).

In *Bousley*, however, the Supreme Court clarified that a petitioner seeking collateral review for a *Bailey* claim must demonstrate "factual innocence" if he failed to raise the issue on

-11-

direct appeal.[4]  *See Bousley*, ___ U.S. at ___, 118 S. Ct. at 1611;

*see also United States v. Ramos*, No. 96-7356, 1998 WL 337889, *5

(3d Cir. June 26, 1998) (holding that in light of *Bousley*

petitioner must demonstrate "actual innocence" of § 924(c)(1)

violation because he could not demonstrate "cause" for failing to

challenge the jury instruction on direct appeal).  In *Bousley*, the

Eighth Circuit had held that the petitioner waived his right to

bring a § 2255 motion based on *Bailey* by not raising the issue on

direct appeal because he could not satisfy the "cause" prong,

notwithstanding the fact that the petitioner's conviction and

direct appeal occurred before the Supreme Court had decided *Bailey*.

*See Bousley v. Brooks*, 97 F.3d 284, 287-88 (8th Cir. 1996).  On

appeal to the Supreme Court, the petitioner in *Bousley* argued that

he had "cause" for his failure to raise his *Bailey* claim because

"the legal basis of the claim was not reasonably available to

counsel" and because "before *Bailey*, any attempt to attack [his]

---

[4]     Although the Supreme Court in *Bousley* considered the
permissibility of collateral attacks on § 924(c)(1) convictions
obtained pursuant to *guilty pleas* (rather than jury verdicts), the
*Bousley* Court's discussion of whether there was "cause" for failing
to challenge the definition of "use" on direct appeal (even before
*Bailey*) applies equally to § 924(c)(1) convictions obtained
pursuant to jury verdicts.  *See United States v. Ramos*, No. 96-
7356, 1998 WL 337889, *5 (3d Cir. June 26, 1998) (applying *Bousley*
standard to § 924(c)(1) conviction obtained pursuant to jury
verdict).  The standard for determining "cause" for a procedural
default does not depend on the method of conviction.  *See Murray*,
477 U.S. at 488, 106 S. Ct. at 2645 (explaining that the "cause"
standard requires "a showing that the factual or legal basis for a
claim was not reasonably available to counsel").

guilty plea would have been futile." *Bousley*, ___ U.S. at ___, 118 S. Ct. at 1611.

The Supreme Court rejected this argument and held that the petitioner was unable to establish "cause" for his default because even before *Bailey* "the Federal Reporters were replete with cases involving challenges to the notion that 'use' is synonymous with mere 'possession.'" *Id.* After agreeing with the Eighth Circuit that the petitioner could not satisfy the "cause and prejudice" standard for failing to raise his § 924(c)(1) challenge on direct appeal, the Supreme Court nonetheless held that the Eighth Circuit erred in refusing to consider the petitioner's claim because the petitioner could overcome the procedural default if he established that the error "'probably resulted in the conviction of one who is actually innocent.'" *Id.* (quoting *Murray*, 477 U.S. at 496, 106 S. Ct. at 2649).

The Supreme Court confirmed that the "actually innocent" standard imposes a higher burden on petitioners than the "prejudice" prong in the cause and prejudice standard. "To establish actual innocence, petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 327-28, 115 S. Ct. 851, 867-68, 130 L. Ed. 2d 808 (1995)); *cf. Logan*, 135 F.3d at 355 (explaining that "prejudice" exists where petitioner can show "he might not have

been convicted"). The Supreme Court reaffirmed in *Bousley* that "'actual innocence' means factual innocence, not mere legal insufficiency.'" *Bousley*, ___ U.S. at ___, 118 S. Ct. at 1611; *see also Rodriguez v. Johnson*, 104 F.3d 694, 697 (5th Cir.) ("'[T]he term 'actual innocence' means *factual*, as opposed to *legal*, innocence))'legal' innocence, of course, would arise whenever a constitutional violation by itself requires reversal, whereas 'actual' innocence, as the Court stated in *McCleskey*, means that the person did not commit the crime.'") (emphasis in original) (quoting *Johnson v. Hargett*, 978 F.2d 855, 859-60 (5th Cir. 1992)), *cert. denied*, 117 S. Ct. 2438 (1997).

While this undoubtedly is a strict standard of review, the Supreme Court explained that to demonstrate "factual innocence" in the context of a *Bailey* claim where the government charged only the "use" of a firearm, the "petitioner need demonstrate no more than that he did not 'use' a firearm as that term is defined in *Bailey*." *Bousley*, ___ U.S. at ___, 118 S. Ct. at 1612; *see also Gobert*, 139 F.3d at 439 (explaining that a refusal to vacate a sentence where *Bailey* has placed the alleged conduct beyond the scope of § 924(c)(1) "would result in a complete miscarriage of justice"). Accordingly, we will overturn Sorrells § 924(c)(1) conviction, only if he can demonstrate, in light of all the evidence, that "it is more likely than not that no reasonable juror would have convicted

-14-

him."[5]  *Bousley*, ___ U.S. at ___, 118 S. Ct. at 1611; *cf. Ramos*, 1998 WL 337889, at *5 (concluding that petitioner could not demonstrate factual innocence "where the evidence was sufficient to support the § 924(c)(1) conviction").

IV

Thus, we now consider whether Sorrells can demonstrate his factual innocence of the § 924(c)(1) offense under *Bailey*.  First, we have little doubt, and the government appears to agree, that the court's jury instructions on "use" were inconsistent with the strictures of *Bailey*.  *Cf. United States v. Cooke*, 110 F.3d 1288,

---

[5]  The government notes that it raised in the district court the argument that Sorrells' instant motion was an abuse of the § 2255 proceedings and that the district court failed to consider this argument. *See* Rule 9(b), RULES GOVERNING § 2255 PROCEEDINGS FOR THE U.S. DISTRICT COURTS. This Court has stated that when the abuse of the writ argument is properly raised in the district court, the district court commits reversible error if it proceeds to consider the merits of the § 2255 motion without considering whether the motion is abusive. *See Foret v. Whitley*, 965 F.2d 18, 19-20 (5th Cir. 1992); *Alexander v. Whitley*, 940 F.2d 946, 947-48 (5th Cir. 1991). For obvious reasons, however, the government here does not seek a reversal of the district court's denial of Sorrells' § 2255 motion. Significantly, we did not state in either *Foret* or *Alexander* that we *must* reverse the district court's denial on the merits and remand for a determination on the abuse of the writ argument. Moreover, where the standard of review on appeal would be identical because of the petitioner's procedural default, *see supra* note 3, the record is fully established (as it is here), and neither party seeks a remand for a determination on the abuse of the writ question, the district court's error is undoubtedly harmless. *Cf. Macklin v. Singletary*, 24 F.3d 1307, 1311 (11th Cir. 1994) ("Convinced of our authority to decide an abuse of the writ issue not addressed by the district court, we now turn to prudential considerations in order to decide whether we should exercise that authority in this case."); *see also Jones v. White*, 992 F.2d 1548, 1558 (11th Cir. 1993) (same).

-15-

1292-93 (7th Cir. 1997) (explaining that "[t]here can be little doubt that the instructions . . . were plainly erroneous in light of *Bailey*" when instruction permitted guilty verdict by finding mere possession of weapon that facilitated drug offense). The court instructed the jury in pertinent part as follows:

> The defendant is considered to have used a firearm if its presence in his possession in any manner facilitated the carrying out of a felony. It is not necessary that the firearm be fired nor that it be considered to have been used.

While this instruction was understandable in light of our pre-*Bailey* case law that held that § 924(c)(1) merely required "evidence that the firearm was available to provide protection to the defendant in connection with his engagement in drug trafficking," *see United States v. Ivy*, 973 F.2d 1184, 1189 (5th Cir. 1992) (internal quotation marks and citation omitted), it cannot withstand post-*Bailey* scrutiny. *See United States v. Thompson*, 122 F.3d 304, 306-07 (5th Cir. 1997). "[T]he *Bailey* Court explicitly declared that intended use or accessibility alone does not constitute 'use' under section 924." *Logan*, 135 F.3d at 355; *see also Cooke*, 110 F.3d at 1292-93. Here, while it is clear that *Mark* "used" the gun within the meaning set forth in *Bailey*,[6] the government presented no evidence that Sorrells "actively

---

[6]    Sorrells does not dispute that Mark's acts of waiving the gun while cooking the methamphetamine and stating that he would shoot through the door if anyone knocked constitute "active employment" under *Bailey*.

-16-

employed" the gun, let alone that he did so in relation to the drug trafficking offense.  Consequently, Sorrells cannot be guilty of "using" the firearm on his own; as such, we can uphold Sorrells' conviction only if the evidence is sufficient to demonstrate that Sorrells' aided and abetted Mark's "use" of the firearm in relation to the drug trafficking offense.[7]

A

We first address Sorrells' arguments that we cannot uphold his conviction on an aiding and abetting theory because he was not indicted for aiding and abetting the firearm count, and because the aiding and abetting instruction to the jury related only to the manufacture of methamphetamine count.[8]  Neither argument merits

---

[7]     Under the Supreme Court's recent decision in *Muscarello v. United States*, Nos. 96-1654 & 96-8837, 1998 WL 292058 (U.S. June 8, 1998), it is clear that Mark also "carried" the firearm within the meaning of § 924(c)(1) because he "knowingly possess[ed] and convey[ed] firearms in a vehicle" in relation to the drug offense. *Id.* at *2.  Nonetheless, because the district court here did not instruct the jury on the "carrying" element and the government presented no evidence that Sorrells himself "carried" the gun, the government does not argue that we uphold Sorrells' conviction under the "carry" prong of § 924(c)(1).  *See United States v. Carter*, 117 F.3d 262, 264 (5th Cir. 1997); *United States v. Garcia*, 86 F.3d 394, 403 (5th Cir. 1996).  Moreover, because the jury was not instructed that Sorrells was responsible for all crimes committed by Mark during the course of the drug conspiracy, his § 924(c)(1) conviction cannot be upheld on the grounds of *Pinkerton* liability. *See Thompson*, 122 F.3d at 307; *United States v. Dean*, 59 F.3d 1479, 1490 n.18 (5th Cir. 1995); *United States v. Crain*, 33 F.3d 480, 486 n.7 (5th Cir. 1994).

[8]     Sorrells' argument stems from the fact that the indictment included an aiding and abetting charge for Count 2, the manufacturing methamphetamine charge, but not for Count 4, the use and carry of a firearm charge.  Sorrells correctly points out that

-17-

much discussion. First, "[a]iding and abetting is not a separate offense, but it is an alternative charge in every indictment, whether explicit or implicit." *See United States v. Neal*, 951 F.2d 630, 633 (5th Cir. 1992). Consequently, Sorrells' argument that he was not indicted for aiding and abetting the § 924(c)(1) violation is unavailing. *See, e.g., id; United States v. Gordon*, 812 F.2d 965, 968-69 (5th Cir. 1987) ("The words 'aid and abet' need not appear in the indictment in order to sustain a conviction as an aider and abettor.").

Second, we reject Sorrells' argument that the general aiding and abetting instruction did not apply to the § 924(c)(1) offense, notwithstanding the order in which it was read to the jury. Significantly, "the aiding and abetting statute, 18 U.S.C. § 2, does not define a separate crime," but rather provides another means of convicting someone of the underlying offense. *See Gordon*, 812 F.2d at 968 (footnote omitted). "[A]s a general rule, an aiding and abetting instruction may be given to the jury even though the indictment does not specifically mention aiding and

the government did not specifically argue at trial that Sorrells was guilty of the use of a firearm as an aider and abettor; he also notes that the court read the aiding and abetting charge to the jury directly after the manufacturing charge (but before the § 924(c)(1) charge). Notwithstanding these facts, as we discuss below, the district court gave the jury a general aiding and abetting instruction and, as long as the evidence supports such a conclusion in relation to the § 924(c)(1) charge, Sorrells is not entitled to relief. *See United States v. Botello*, 991 F.2d 189, 191 (5th Cir. 1993); *Gordon*, 812 F.2d at 968-69.

abetting, so long as evidence is introduced to support an aiding and abetting conviction." *United States v. Botello*, 991 F.2d 189, 191 (5th Cir. 1993). At trial, the district court gave a general aiding and abetting instruction, quoting the language of 18 U.S.C. § 2 and explaining its elements, and Sorrells did not (and in this motion still does not) challenge the correctness of this jury charge.[9] Thus, the issue of aiding and abetting was properly before the jury at trial, and Sorrells is entitled to relief only if he can demonstrate that he is "actually innocent" of aiding and abetting the § 924(c)(1) charge in light of *Bailey*. *See Gordon*, 812 F.2d at 969 ("'[T]he rule is well established, both in this Circuit and others, that one who has been indicted as a principal may be convicted on evidence showing that he has merely aided and abetted the commission of the offense.'") (quoting *United States v. Vines*, 580 F.2d 850, 853 (5th Cir. 1978)).

B

1

In order to convict a defendant of aiding and abetting a crime under 18 U.S.C. § 2, "the Government must prove (1) that the defendant associated with the criminal venture, (2) participated in

---

[9] 18 U.S.C. § 2 states as follows: "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces, or procures its commission is punishable as a principal. Whoever willfully causes an act to be done, which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

-19-

the venture, and (3) sought by action to make the venture succeed." *United States v. Gallo*, 927 F.2d 815, 822 (5th Cir. 1991). The criminal venture with which the defendant must "participate" and "associate" here is the use or carry of a firearm in relation to the drug offense. *See United States v. Wainuskis*, 138 F.3d 183, 187 (5th Cir. 1998). "Association means that the defendant shared in the criminal intent of the principal." *United States v. Salazar*, 66 F.3d 723, 729 (5th Cir. 1995). "Participation means that the defendant engaged in some affirmative conduct designed to aid the venture. Although relevant, mere presence and association are insufficient to sustain a conviction of aiding and abetting." *Id.*

Under our broad, pre-*Bailey* definition of "use," a defendant could be convicted of aiding and abetting a § 924(c)(1) violation if the jury concluded that the defendant knew the gun was at least available to the principal and took some action that assisted the principal's use of the gun. *See Salazar*, 66 F.3d at 729; *see also United States v. Morrow*, 977 F.2d 222, 231 (6th Cir. 1992) (en banc). This standard incorporated the same definition of "use" that *Bailey* rejected, allowing a conviction for aiding and abetting a § 924(c)(1) violation when the defendant knew the weapon was merely "available" to the principal and that it facilitated the crime. *See Salazar*, 66 F.3d at 728 ("To prove the use or carrying of a firearm, the government need not show that the defendant used

-20-

or brandished the weapon in an affirmative manner; it is sufficient for the government to prove that the 'firearm facilitated or had a role in the crime, such as emboldening an actor who had the opportunity or ability to display or discharge the weapon to protect himself or intimidate others.'") (quoting *United States v. Contreras*, 950 F.2d 232, 241 (5th Cir. 1991)). Consequently, while *Bailey* does not affect the elements of "aiding and abetting" (*i.e.,* the defendant must aid, abet, counsel, command, induce, or procure the commission of a crime with the requisite intent), *Bailey* does affect the "use" element of § 924(c)(1)))and thus, it also affects the elements for aiding and abetting a § 924(c)(1) violation. *See United States v. Pipola*, 83 F.3d 556, 562 (2d Cir.) ("To show specific intent the prosecution must prove the defendant knew of the proposed crime))suspicion that it might occur is not enough))and had an interest in furthering it."), *cert. denied*, 117 S. Ct. 183 (1996).

We recently explained that "to be found liable for another's criminal activity [under § 924(c)(1)], an aider and abettor must share in the criminal intent to use the firearm during a drug trafficking offense." *Wainuskis*, 138 F.3d at 189; *see also* AIDING AND ABETTING INSTRUCTION, FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS 2.06 (1997) ("If another person is acting under the direction of the defendant or if the defendant joins another person and performs acts *with the intent to commit a crime*, then the law holds the defendant

-21-

responsible for the acts and conduct of such other persons just as though the defendant had committed the acts or engaged in such conduct.  Before any defendant may be held criminally responsible for the acts of others it is necessary that the accused deliberately associate himself in some way with the crime and participate in it *with the intent to bring about the crime*.") (emphasis added).  After *Bailey*, the "intent to bring about the crime" defined in § 924(c)(1) is the intent that the firearm be "used" within the meaning of *Bailey*.

Thus, in order to be convicted of aiding and abetting the § 924(c)(1) offense (under the "use" prong), the defendant must act with the knowledge or specific intent of advancing the "use" of the firearm in relation to the drug trafficking offense.[10]  *See, e.g., United States v. Giraldo*, 80 F.3d 667, 676 (2d Cir.) ("Proof simply that a defendant knew that a firearm would be carried, even accompanied by proof that he performed some act to facilitate or encourage the underlying crime in connection with which the firearm was carried, is insufficient to support a conviction for aiding and abetting the carrying of a firearm . . . ."), *cert. denied*, 117 S. Ct. 135 (1996); *United States v. Bennett*, 75 F.3d 40, 45 (1st Cir.)

---

[10]    Both parties agree that in order to convict the defendant of aiding and abetting a § 924(c)(1) violation, the principal must have committed acts that would violate § 924(c)(1).  *See* 18 U.S.C. § 2.  As we have stated, Sorrells concedes that Mark's actions constitute "use" of the firearm during the drug offense.  *See supra* note 6.

("Thus, his conviction can be sustained under 18 U.S.C. § 2 if [the defendant] knew a firearm would be carried or used by a co-conspirator in the drug trafficking offense and willingly took some action to facilitate the carriage or use."), *cert. denied*, 117 S. Ct. 130 (1996); *see also Barrett v. United States*, 120 F.3d 900, 900-01 (8th Cir. 1997) (upholding aiding and abetting conviction for 924(c)(1) when "Barrett admitted at his guilty-plea hearing that he gave Gilstrap the revolver *intending* for Gilstrap to take it with him while distributing cocaine Barrett had given Gilstrap."); *cf. United States v. Foreman*, 914 F. Supp. 385, 387 (C.D. Cal. 1996) ("An aider and abettor must knowingly and intentionally aid and abet the actual elements of the crime, and not just create the circumstances that permit the crime to occur."). Of course, the jury is entitled to draw reasonable inferences of knowledge or intent from the actions of the defendant. *See Pipola*, 83 F.3d at 565; *Bennett*, 75 F.3d at 45.

In addition to requiring proof of knowledge or intent for a conviction of aiding and abetting, "there must also be proof that the defendant performed some affirmative act relating to the firearm." *Giraldo*, 80 F.3d at 676; *United States v. Bazemore*, 138 F.3d 947, 949 (11th Cir. 1998) ("In addition to knowledge, in order to sustain a conviction under an aiding and abetting theory, there must be some proof "linking" the defendant to the gun, because section 924(c) does not permit 'guilt by association.'"). The link

to the firearm is necessary because the defendant is punished as a principal for "using" a firearm in relation to a drug offense, and therefore must facilitate in the "use" of the firearm rather than simply assist in the crime underlying the § 924(c)(1) violation. *See Bazemore*, 138 F.3d at 949-50.

2

Application of the aiding and abetting standard to the facts of this case presents a relatively close and difficult question; ultimately, however, we are guided by our narrow standard of review for considering Sorrells' claim. First, as we concluded above, the court erred in instructing the jury on the "use" element for the § 924(c)(1) violation, allowing a conviction for aiding and abetting based on the mere possession of a firearm that in any manner facilitated a drug crime. *See Bailey*, 516 U.S. at 145-46, 116 S. Ct. at 506 (holding that "'use' must connote more than mere possession of a firearm by a person who commits a drug offense"). Second, although the evidence in the light most favorable to the verdict indicates that Sorrells gave Mark the firearm and knew that Mark had the gun while he was manufacturing the methamphetamine, Sorrells' criminal intent in relation to Mark's actual "use" of the firearm within the meaning of § 924(c)(1) is not as clear. *Cf. Salazar*, 66 F.3d at 729 (noting that "[t]his circuit has not considered aider and abettor liability under § 924(c)(1) when the defendant was not present during the commission of the crime in

-24-

which the firearm was used" but concluding that we have "never imposed a requirement that an individual be physically present when the gun is used").

Significantly, Sorrells conceded that Mark "used" the gun within the meaning of *Bailey*. In addition, the facilitation element was easily met on these facts because Sorrells gave Mark the specific gun that Mark used in relation to the drug offense. *Cf. United States v. Medina*, 32 F.3d 40, 45-46 (2d Cir. 1994) (finding that the § 924(c)(1) conviction could not be upheld when the defendant provided a different gun from the one that was used in the armed robbery). The difficult question thus becomes whether the knowledge element was met))in other words, whether a reasonable jury could have inferred that Sorrells knew or intended that Mark would "use" the gun during the manufacturing of the drugs. Because Sorrells must demonstrate that he is "factually innocent" of aiding and abetting the "use" of the firearm, he must show that it is more probable than not that no reasonable jury would have convicted him under the correct instructions for the "use" element. *See, e.g., Ramos*, 1998 WL 337889, at *5; *see also Bousley*, ___ U.S. at ___, 118 S. Ct. at 1611.

The facts linking Sorrells to the firearm and the drug trafficking offense are as follows: Sorrells put up the deed to his house as collateral for the chemicals; Sorrells knew the purpose for which the deed was going to be used; Sorrells stated that it

was not the first time for Mark and planned a second deal with the officers; he rented the beach house where the methamphetamine would be manufactured; he gave Mark the firearm that Mark used in relation to the drug offense; and he knew that Mark had the firearm at the beach house while he was manufacturing the methamphetamine. On these facts, Sorrells cannot demonstrate his factual innocence or that no reasonable jury could infer that he knew or intended that Mark would "use" the gun while manufacturing the methamphetamine. *See Pipola*, 83 F.3d at 565 (holding that where the defendant was the leader of the group and made the planning decisions for several armed robberies, "the proof permitted the jury to infer that Pipola specifically encouraged the use of firearms in the robberies"); *Price*, 76 F.3d at 529-30 ("Even if Mr. Price had not known in advance that Mr. Stubbs was going to use a gun during the robbery, it seems perfectly clear that Mr. Price was aware that the gun was being used while he continued to participate in the robbery."); *Bennett*, 75 F.3d at 45 ("From this evidence a jury could find that Bennett knew that one of his companions was carrying the gun when they committed the attack, and facilitation is essentially undisputed since Bennett provided his car to transport himself, his co-conspirators, and the gun to execute the raid.").

Sorrells played a significant role in planning the manufacture of the methamphetamine, gave Mark the gun that was

"used" during the offense, and knew Mark had the gun during the commission of the underlying offense; as such, he cannot overcome the hurdle of demonstrating his factual innocence. While simply having knowledge of the gun and participating in the underlying drug trafficking crime is not, on its own, "aiding and abetting" the use of the firearm after *Bailey*, the jury could infer from Sorrells' knowledge and actions, that he encouraged Mark's "use" of the gun to protect the bounty of their drug conspiracy. *See Pipola*, 83 F.3d at 562 ("Because aiding and abetting requires a defendant's conscious assistance in the commission of the specific underlying crime . . . . [t]here must be proof . . . that the defendant's actions directly facilitated or encouraged either the use of or the carrying of a firearm."); *see also Wainuskis*, 138 F.3d at 189 ("It is evident that Wainuskis possessed both the necessary knowledge, that weapons were available for Materne's use, and the intent to be convicted as an aider and abettor in Materne's crime.") (footnote omitted).

V

We conclude that Sorrells fails to demonstrate that he is factually innocent of aiding and abetting the § 924(c)(1) violation. Accordingly, the district court properly denied Sorrells' § 2255 motion to vacate his § 924(c)(1) conviction. The judgment of the district court is hereby AFFIRMED.