**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 99-20924
(Summary Calendar)
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

TAWANA SHELETTE COOPER,

Defendant - Appellant.

Appeal from the United States District Court
For the Southern District of Texas
District Court Number H-99-CR-206-1

June 26, 2000

Before JOLLY, DAVIS, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

Tawana Cooper appeals her conviction and sentence for aiding and abetting the robbery of

a credit union in violation of 18 U.S.C. § 2113(a). We affirm.

Alonzo Warren robbed the branch of the SCH Federal Credit Union ("SCH") located at 2002

Holcombe Street (the "Holcombe branch"). Warren pled guilty to the charges against him and

[*]     Pursuant to 5ᵀᴴ CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5ᵀᴴ CIR. R. 47.5.4.

testified against Cooper, his girlfriend, who had been a teller at the Holcombe branch until her firing a few weeks earlier. Warren claimed that they planned the robbery together, that Cooper gave him significant inside information which facilitated the robbery, and that—even though he performed the robbery alone—she offered him assistance before and after the robbery.

Cooper was charged in a two-count indictment with: (1) bank robbery by force and with a dangerous weapon, in violation of 18 U.S.C. § 2113(a), (d); and (2) using a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1). She was found guilty only of the lesser included offense of simple robbery under § 2113(a). The court sentenced her to 108 months after enhancing her sentence for use of a gun during her offense and after denying her request for a reduction for minimal participation.

Cooper first challenges her conviction, arguing that the evidence against her was insufficient and that the trial court should have granted her motion for a judgment of acquittal. We review the district court's denial of her motion for acquittal *de novo*, determining whether, "viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences from the evidence in support of the verdict, a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt." *United States v. Ferguson*, — F.3d —, 2000 WL 543817, at *4 (5th Cir. May 4, 2000). We reverse the conviction if "the evidence gives equal or nearly equal circumstantial support to a theory of guilt, as well as to a theory of innocence." *Id.*

Cooper argues that there was insufficient evidence that the Holcombe branch was federally insured, a jurisdictional element of the offense which the government had to prove beyond a reasonable doubt. *See* 18 U.S.C. § 2113(a); *United States v. Guerrero*, 169 F.3d 933, 944 (5th Cir.

1999).  At trial, the government submitted an affidavit from a regional director of the National Credit Union Administration which stated:

> SCH Federal Credit Union, charter number 17486, whose main office is located at 1601 Pierce, Houston, Texas 77003, was first insured by the National Credit Union Share Insurance Fund (NCUSIF) on November 2, 1971. . . .
>
> . . .
>
> SCH Federal Credit Union has been continuously insured since becoming insured by the NCUSIF, and in particular, was insured on June 26, 1998.

Cooper argues that this affidavit does not show that every SCH branch was federally insured, because it suggests that only the branch at 1601 Pierce (the "Pierce branch") was insured.  However, a jury could reasonably have concluded that each SCH branch was insured from the affidavit's unchallenged reference to the fact that "SCH . . . has been continuously insured," and its mention of the Pierce branch only to specify the location of SCH's main office.  Coupled with testimony from the Holcombe branch manager that the Holcombe branch was an SCH branch at the time of the robbery and that his supervisor was located at the Pierce branch, the affidavit provides sufficient proof that the Holcombe branch was federally insured.  *See United States v. Williams*, 592 F.2d 1277, 1282 (5th Cir. 1979) (finding sufficient evidence of insured status, even though it "was probably close to the minimum we could allow," where:  (1) one officer testified that the bank was insured and that the specific office was a branch of the bank; and (2) another officer testified that the bank was insured, and that, even though he did not know if the insurance contract provided this, he believed all the branches were similarly insured).

Cooper also argues that there was insufficient evidence that she participated in the robbery. She concedes that an aiding and abetting conviction was possible under the indictment, *see United States v. Sorrells*, 145 F.3d 744, 752 (5th Cir. 1998), but she argues that aiding and abetting was not

established because there was insufficient evidence of an affirmative act by her to help the robbery, *see id.* at 753 ("[T]o convict a defendant of aiding and abetting a crime under 18 U.S.C. § 2, 'the Government must prove (1) that the defendant associated with the criminal venture, (2) participated in the venture, and (3) sought by action to make the venture succeed.'") (citation omitted).

Cooper's argument is based on her attempt to isolate each piece of evidence against her and offer innocuous explanations for each alone. This contradicts our directive that we review the evidence against her in the aggregate. *See United States v. Burton*, 126 F.3d 666, 677 (5th Cir. 1997). Viewing the evidence this way, it clearly sufficiently showed her participation: Warren testified that Cooper helped plan the robbery; she gave him crucial information about the Holcombe branch; she originally intended to take part in the robbery; she allowed him to use her gun once their original plan failed and they decided to have him rob the Holcombe branch alone;[1] she bought the duct tape that he used; she called his employer to help him get the day off from work so he could effect the robbery; and she helped him count, spend, and store the money after the robbery. *Cf. id.* at 678 ("The jury reasonably could have found that the use of Carr's vehicle in the robbery, coupled with his sham stolen car report, established that Carr was associated with the robbery, that he participated in it, and

---

[1]    Warren testified that, acting on Cooper's information, they planned to rob the Holcombe branch after its biweekly receipt of a large shipment of money. Their original plan was to conduct the robbery while Cooper was working: Warren would follow her into work, order her and the other female on duty to lie down, and then remove the money. The presence of Cooper and the other employee alone would allow Warren to effect the robbery without using a weapon. Cooper would then throw off the police by offering a description of Warren which contradicted the other employee's description.

This plan went astray when Warren and Cooper, who lived together, overslept on the morning of the planned robbery. This forced them to push back their plan until two weeks later, when the branch received another money shipment. By this time, however, Cooper had been fired. Knowing that the manager would be at the branch during the planned robbery, and concerned that he might attempt to be a "hero," Warren decided to bring a gun and duct tape and to go alone.

-4-

that he 'sought by action to make the venture succeed.'").

Cooper next challenges the five-level sentence enhancement she received for displaying a firearm during the robbery. *See* U.S.S.G. § 2B3.1(b)(2)(C) ("[I]f a firearm was brandished, displayed, or possessed, increase by 5 levels . . . ."). The court enhanced her sentence after concluding that it was foreseeable to her that Warren would use the gun. We review the court's interpretation of the Guidelines *de novo* and its factual findings for clear error. *See United States v. Phillips*, 210 F.3d 345, 351 (5th Cir. 2000).

Cooper argues that because the jury acquitted her of robbery with a firearm, the court's decision to sentence her based on using a firearm violated her constitutional rights by conflicting with the jury verdict. We have previously rejected similar arguments, noting that, because conviction requires a different showing of proof than a sentencing enhancement, an acquittal does not preclude an enhancement on similar grounds. *See United States v. Buchanan*, 70 F.3d 818, 827-28 (5th Cir. 1995). Here, the enhancement was proper because there was reliable evidence that Cooper gave the gun to Warren knowing he intended to use it in the robbery. *See* U.S.S.G. § 2B3.1 (allowing the enhancement); *id.* § 1B1.3(a)(1)(B) (including among relevant conduct, "in the case of a jointly undertaken criminal activity[,] . . . all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity.").

Finally, Cooper challenges the district court's denial of her motion for a reduction in her sentence for minimal participation. *See* U.S.S.G. § 3B1.2(a) ("If the defendant was a minimal participant in any criminal activity, decrease by 4 levels."). This adjustment is "used infrequently," *see id.* comment. (n.2), and we review its denial for clear error, *see United States v. Waskom*, 179 F.3d 303, 313 (5th Cir. 1999).

To merit the reduction, Cooper had to show that she was "substantially less culpable than the average participant . . . . by a preponderance of the evidence." *United States v. Posada-Rios*, 158 F.3d 832, 880 (5th Cir. 1998). She argues that the jury's "'not guilty' finding[s] in regard to the aggravating elements, as a matter of law assigns a mitigating, minimal, minimum role to Cooper's conduct." She cites no authority for this incorrect proposition. The jury did not acquit her of involvement in the offense, only of using a gun in the offense. It did convict her of aiding and abetting, based on the substantial assistance she provided to Warren. In light of her role in planning, providing Warren with supplies and information, and helping him count and spend the money after the robbery, it was not clear error for the court to deny her reduction request.

Accordingly, we AFFIRM Cooper's conviction and sentence.