REVISED DECEMBER 11, 2007

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

F I L E D

March 13, 2006

Charles R. Fulbruge III
Clerk

No. 05-10188
Summary Calendar

UNITED STATES OF AMERICA,

                    Plaintiff-Appellee,

versus

MARVIN ISAACS,

                    Defendant-Appellant.


Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:04-CR-128-2


Before HIGGINBOTHAM, BENAVIDES, and DENNIS, Circuit Judges.

PER CURIAM:[*]

    Marvin Isaacs appeals his jury conviction of bank robbery and aiding and abetting and of possession of a firearm during and in relation to a bank robbery and aiding and abetting, in violation of 18 U.S.C. §§ 2, 924(c)(1)(A)(1), and 2113(a). Counts one and two of the indictment involved a July 27, 2004 robbery at a Bank One location, and counts three and four pertained to a robbery on August 9, 2004, at a Frost Bank location, both banks located in Fort Worth, Texas.

---

[*] Pursuant to the 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under limited circumstances set forth in 5TH CIR. R. 47.5.4.

Isaacs argues that there was no probable cause to arrest him and therefore the district court erred by denying his motion to suppress his confession, that the district court improperly admitted extraneous offense evidence, and that the evidence is insufficient to support his conviction for aiding and abetting the use and carrying of a firearm during and in relation to a bank robbery.  We affirm.


I

Isaacs asserts that the district court erred by denying his motion to suppress the confession made following his warrantless arrest.  He argues that the officers lacked probable cause to arrest him and, as a result, all statements should have been suppressed as the fruit of that illegal arrest.[1]  In reviewing a district court's denial of a motion to suppress, we review factual findings, including credibility choices, for clear error, while legal conclusions are reviewed *de novo*.[2]

Of course, law enforcement officials may arrest an individual in a public place without a warrant if they have

---

[1] *Wong Sun v. United States*, 371 U.S. 471 (1963); *see also United States v. Runyan*, 290 F.3d 223, 234 (5th Cir. 2002) ("We view the facts underlying the suppression determination in the light most favorable to the prevailing party.... It is the defendant's burden to prove a Fourth Amendment violation by a preponderance of the evidence.  However, once the defendant proves such a violation, the burden shifts to the government to demonstrate why the exclusionary rule should not apply to the fruits of the illegal search or seizure" (citations omitted).).

[2] *United States v. Santiago*, 410 F.3d 193, 197 (5th Cir. 2005).

probable cause to believe that individual committed a felony.[3] "Probable cause for a warrantless arrest exists when the totality of the circumstances within a police officer's knowledge at the moment of the arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense."[4]  When considering what a reasonable person would have concluded, we consider the expertise and experience of the law enforcement official.[5]  The probable cause must be analyzed under the totality of the circumstances to determine whether there is a fair probability that a crime occurred.[6]  A "'fair probability' is something more than a bare suspicion, but [it] need not reach the fifty percent mark."[7]

Suppression hearing testimony indicates that law enforcement officials who were investigating the Frost Bank robbery learned that the getaway vehicle used in the robbery had been rented earlier that morning by Laffoon and a second man.  Shortly after the robbery, officials learned that Laffoon was returning the car to the rental agency.  Based on information obtained during the investigation of the robbery at Frost Bank, law enforcement

---

[3]  *See United States v. Garcia*, 179 F.3d 265, 268 (5th Cir. 1999).

[4]  *Id.*

[5]  *Id.*

[6]  *Id.* at 269.

[7]  *Id.*

3

officials were certain that Laffoon was the Frost Bank robber and that he was involved in previous robberies. Isaacs, who returned to the rental agency with Laffoon, was identified as the man with Laffoon earlier that morning, prior to the robbery, when the car was rented. Although one witness raised a question whether Laffoon's getaway driver at the Frost Bank was male or female, the law enforcement officials knew that the driver of the getaway vehicle had long hair. A witness at the Bank One robbery described the driver as a Caucasian male with long hair. Therefore, the descriptions of the getaway driver at both crime scenes resembled Isaacs, and he was placed in the vehicle used in the robbery both before and after it transpired.[8]

Thus, the totality of the circumstances and facts within the law enforcement officials' knowledge when they arrested Isaacs was sufficient for a reasonable person to conclude that Isaacs was Laffoon's driver in the Frost Bank robbery. Probable cause therefore existed, and the district court did not err in denying Isaacs's motion to suppress.

## II

We review for abuse of discretion cases involving the

---

[8] *See United States v. Baldwin*, 644 F.2d 381, 384 (5th Cir. 1981) (finding probable cause to arrest on suspicion of robbery where defendant's truck was positively identified as the getaway vehicle and witnesses had provided police descriptions generally fitting the defendant).

admission of FED.R.EVID. 404(b) evidence.[9]  Irrespective of the

threshold determination regarding whether the evidence is

intrinsic or extrinsic,[10] the district court did not err in

admitting the evidence.  Before admitting Rule 404(b) evidence, a

trial court must apply a two-step inquiry set forth in *United

States v. Beechum*: (1) whether the offense evidence is relevant

to an issue other than the defendant's character and (2) whether

the evidence possess probative value that is not substantially

outweighed by its undue prejudice, meeting the requirements of

FED.R.EVID. 403.[11]  To meet the relevancy requirement, the

government need only produce sufficient evidence to permit a

reasonable jury to find the preliminary facts by a preponderance

of the evidence.[12]

A police officer testified that on August 3, 2004, he

stopped a Black Dakota truck driven by Isaacs, the vehicle used

in the Bank One robbery.  After having gained consent to search

the vehicle, the officer found a firearm and ammunition–the same

type and caliber weapon used in the Frost Bank robbery.  The

---

[9]  *See United States v. Peterson*, 244 F.3d 385, 392 (5th Cir. 2001).

[10]  *See United States v. Williams*, 343 F.3d 423, 436 (5th Cir. 2003); *see also United States v. Coleman*, 78 F.3d 154, 156 (5th Cir. 1996) (stating that intrinsic evidence does not implicate Rule 404(b)); *but see Unites States v. Walters*, 351 F.3d 159, 166 n.2 (5th Cir. 2003) (noting in dictum that the Court would only analyze the admissibility of the disputed evidence under Rule 404(b) since the government had not offered it as intrinsic evidence at trial).

[11]  582 F.2d 898, 911 (5th Cir. 1978); *Peterson*, 244 F.3d at 392.

[12]  *United States v. Anderson*, 933 F.2d 1261, 1268-69 (5th Cir. 1991).

5

firearm had a different, but sequential, serial number as the weapon used in the Frost Bank robbery and was procured by Laffoon. The district court did not abuse its discretion in finding that the evidence was not offered to show propensity or bad character.[13] The evidence was appropriately before the jury as proof of intent, identity, and absence of mistake or accident.[14]

Isaacs also contests the admittance of evidence regarding four non-charged bank robberies. Isaacs asserts that this evidence is irrelevant, cumulative, and prejudicial. However, when the evidence closely parallels the charged offense, then the probity of the evidence may outweigh its unfair prejudice.[15] Again, the district court did not abuse its discretion in so ruling.

III

---

[13] The district court twice instructed the jury as to the proper scope of consideration to be given to the testimony. *See United States v. Parsee*, 178 F.3d 374, 379 (5th Cir. 1999) ("The court instructed the jury that it could consider the bad acts only for the limited purpose of intent, thereby minimizing any prejudicial effect.").

[14] *See* FED.R.EVID. 404(b); *United States v. Posada-Rios*, 158 F.3d 832, 871 (5th Cir. 1998) (finding evidence of inculpatory material found during vehicle stop admissible to show intent); *United States v. Hernendez-Guevara*, 162 F.3d 863, 870 (5th Cir. 1998).

[15] *Beechum*, 582 F.2d at 917 (stating "the overall similarity of the extrinsic and charged offenses in this case generates sufficient probity to meet the rule 403 test that the probative value of the evidence not be substantially outweighed by its unfair prejudice); *United States v. Guerrero*, 169 F.3d 933, 939 (5th Cir. 1999) (finding admissible identity evidence where the circumstances of the extraneous act were so similar to the offense in question that they evince a signature quality...").

6

Isaacs moved for a judgment of acquittal regarding the firearm counts at the close of the Government's case and at the close of evidence. We review *de novo*.[16] We will affirm the jury's verdict if a reasonable trier of fact could conclude from the evidence that the elements of the offense were established beyond a reasonable doubt, viewing the evidence in the light most favorable to the verdict and drawing all inferences from the evidence to support the verdict.[17]

In order to prove aiding and abetting, the Government must show that Isaacs (1) associated with the criminal venture, (2) participated in the venture, and (3) sought by action to make the venture succeed.[18] Isaacs drove the vehicle used in the robberies, and he participated in the decision making that led to the Frost Bank robbery.[19] Isaacs satisfies these three elements of aiding and abetting.

In a conviction for aiding and abetting an 18 U.S.C. § 924(c)(1) offense, the prosecution must prove that the defendant

---

[16] *See United States v. Izydore*, 167 F.3d 213, 219 (5th Cir. 1999).

[17] *United States v. Floyd*, 343 F.3d 363, 370 (5th Cir. 2003).

[18] *United States v. Lopez-Urbina*, 434 F.3d 750, 757 (5th Cir. 2005) ("Association means that the defendant shared in the criminal intent of the principal. Participation means that the defendant engaged in some affirmative conduct designed to aid the venture. The government must therefore prove the underlying crime was committed by someone other than the defendant and that the defendant himself either acted or failed to act with the specific intent if advancing the commission of the underlying crime" (citations omitted).).

[19] There is no indication that the mutual planning included discussion of a firearm.

acted with the knowledge or specific intent of advancing the use of the firearm. The jury is entitled to draw reasonable inferences of knowledge or intent from the defendant's actions.[20] There must also be proof that the defendant performed some affirmative act relating to the firearm.[21] Knowledge of the underlying offense or knowledge that a firearm will be used in the commission of the underlying offense is insufficient to sustain a conviction.[22] There must be evidence that the defendant took some action to facilitate or encourage the use or carrying of a firearm rather than simply assist in the crime underlying the 18 U.S.C. § 924(c)(1) violation.[23]

Isaacs argues that the government failed to establish an affirmative link between himself and the firearm that Laffoon used in the robberies. Trial testimony refutes Isaac's argument. Laffoon carried a firearm during both of the charged bank robberies, and Isaacs, who drove the car in both robberies, knew that Laffoon carried the firearm. The government argues that "once knowledge on the part of the aider and abetter is established, it does not take much to satisfy the facilitation

---

[20] *Lopez-Urbina*, 434 F.3d at 758.

[21] *Id.*

[22] *Id.*

[23] *Id.* "The link to the firearm is necessary because the defendant is punished as a principal for using a firearm...." *Id.*

element."[24]

Although Isaacs did not enter the banks with Laffoon,[25] Isaacs confessed to his involvement in other robberies with Laffoon, to knowing that Laffoon carried a firearm in all of the robberies in which Isaacs participated, and to knowing that the firearm that had been used in the Frost Bank robbery was in the vehicle at the time of Isaacs's arrest.[26]  Also, between the dates of the Frost Bank and the Bank One robbery, in a traffic stop of the Dakota truck that Isaacs was driving, but which had been rented by Laffoon, police found the same make and model of firearm as that which was used by Laffoon in the Frost Bank robbery.  Isaacs consistently participated in robberies during which Laffoon used a firearm, knowingly conveyed to and from the robberies the firearm that was to be used in the robberies, and also independently transported a firearm in a vehicle while not in Laffoon's presence.  Moreover, the government argues that once Laffoon re-entered the getaway car, Isaacs, with the intent of

---

[24] *United States v. Bennett*, 75 F.3d 40, 45 (1st Cir. 1996) (stating "facilitation is essentially undisputed since Bennett provided his car to transport himself, his co-conspirators, and the gun to execute the raid"), *cited in United States v. Sorrells*, 145 F.3d 744, 755 (5th Cir. 1998).

[25] "This court has never imposed a requirement that an individual be physically present when the gun is used to be convicted of aiding and abetting under § 924(c)(1)." *United States v. Salazar*, 66 F.3d 723, 729 (5th Cir. 1995) (per curiam).

[26] The phrase "carries a firearm" in 18 U.S.C. § 924(c)(1) is not limited to the carrying of firearms on a person, but also applies to persons who knowingly possess and convey firearms in a vehicle.  *See Muscarello v. United States*, 524 U.S. 125, 127 (1998).

9

alluding police, commenced carrying the firearm.[27]  The

government also suggests that Isaacs benefitted from Laffoon's

use of the gun, as it decreased the time Laffoon was in the bank

and provided more time to escape.[28]

Though the government cites three Fifth Circuit cases,[29]

only *Sorrells* is on point, yet it is factually distinguishable.[30]

Still, quoting *Bennett*, we stated: "'From this evidence a jury

could find that Bennett knew that one of his companions was

carrying the gun when they committed the attack, and facilitation

is essentially undisputed since Bennett provided his car to

transport himself, his co-conspirators, and the gun to execute

---

[27]   *United States v. Willis*, 559 F.2d 443, 444 (5th Cir. 1977) (holding
that the crime of bank robbery continues throughout the escape); *United States
v. Morrow*, 977 F.2d 222, 231 (6th Cir. 1992) (finding a § 924(c) violation when
the defendant accompanied his partner into the crime scene and received the
protection of his confederate's weapon).

[28]   *See United States v. Woods*, 148 F.3d 843, 848 (7th Cir. 1998) (stating
that "benefitting from the use of the gun permits an inference of facilitation");
*see also United States v. Gordon*, 290 F.3d 539, 547 (3d Cir. 2002) (holding that
an aiding and abetting violation of section 924(c) does not require that the
defendant possessed or controlled the weapon so long as the defendant's actions
"were sufficiently intertwined with, and his criminal objectives furthered by the
actions of the participant who did carry and use the firearm"); *Bazemore v.
United States*, 138 F.3d 947, 949-50 (11th Cir. 1998) ("Bazemore cannot knowingly
benefit from the protection afforded by the firearm carried by his companion and
then subsequently evade criminal liability for its presence.").

[29]   *Unites States v. Bell*, 812 F.2d 188, 195 n.10 (5th Cir. 1987)
(describing when an accomplice can be accountable as a principle); *United States
v. Hickman*, 151 F.3d  446, 455-56 (5th Cir. 1998) (focusing solely on the
knowledge criteria); *United States v. Sorrells*, 145 F.3d 744, 755 (5th Cir.
1998).

[30]  145 F.3d at 755.  In *Sorrells*, the accomplice affirmatively provided
the principal with a gun, whereas, here, Laffoon procured the weapon(s) used in
the bank robberies.  Also, the knowledge criteria was primarily at issue.  *Id*.

10

the raid.'"[31]  The government then cites persuasive extra-jurisdictional cases to further support its contention.[32]

From the foregoing evidence the jury could have reasonably inferred that Isaacs facilitated or encouraged the use or carrying of a firearm rather than simply assisted in the crime underlying the 18 U.S.C. § 924(c)(1) violation.  When viewed with all reasonable inferences made in support of the jury's verdict, the evidence supports Isaac's conviction for aiding and abetting the possession of a firearm during and in relation to a bank robbery.

AFFIRMED.

---

[31] *Id*. (citing *Bennett*, 75 F.3d at 45); *see also Salazar*, 66 F.3d at 729 (stating that "[t]he jury could also have considered the evidence that the weapons were stored at Salazar's place of business as an affirmative act aiding the use of the weapon" and that "Salazar also assisted Hernandez by getting a locksmith to unlock his shop in which the keys to the car that contained the gun and was used in the escape were located") .

[32] *Bazemore*, 138 F.3d at 949-50 (finding "ample evidence linking Bazemore to the gun, because he was the driver of the car which carried both Abercrombie and the gun to the drug deal and because he knowingly accepted the gun's protection while he was inspecting the marijuana"); *United States v. Easter*, 66 F.3d 1018, 1024 (9th Cir. 1995) (affirming a defendant's aiding and abetting conviction based on evidence that the gun was present in the automobile and the defendant heard other participants on the way to the robbery discussing the gun); *Santoro v. United States*, 187 F.3d 14, 17 (1st Cir. 1999) (stating that "Santoro accompanied the other defendants to the stash house and, whether or not he, himself, used or carried a firearm, he acted as a lookout for the others and, thus, facilitated his co-defendants' use and carriage of the firearms").