IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 00-41017
USDC No. 1:99-CR-164-3
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAYMON SMITH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Eastern District of Texas
_____

December 19, 2001

Before SMITH and EMILIO M. GARZA, Circuit Judges, and CUMMINGS, District Judge[1].

PER CURIAM:[2]

Defendant, Daymon Smith, was convicted in the United States District Court for the

Eastern District of Texas of armed bank robbery resulting in death in violation of 18 U.S.C.

§ 2113(a), (d), and (e), and of aiding and abetting in violation of 18 U.S.C. § 2. Defendant

appealed. This Court affirms the conviction of the Defendant-Appellant.

---

[1]District Judge of the Northern District of Texas, sitting by designation.

[2]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

**Facts**

On January 7, 1999, a robbery occurred at the Federal Savings Bank, East Marshall Branch in Longview, Texas. This was the third in a series of armed robberies and murders in the same area of Texas in late 1998 and early 1999. Betty Paddie and Elizabeth Flahie, the only two employees in the bank at the time of the robbery, were both shot during the robbery and Paddie subsequently died as a result. A high speed chase ensued when the robbers fled the scene of the bank robbery. The chase led into the city of Marshall, Texas. In Marshall, the getaway car slid into the parking lot of Moon's Washateria, and a passenger from the car fled on foot from the parking lot. The car, however, continued on and eventually crashed into a home nearby. The driver of the car, Chuck Stephens, was arrested. A gun was recovered from the car; the recovered gun was the gun used in the two previous robberies/murders and it was also used to shoot both Paddie and Flahie. It was later determined that the previous two murders were committed by Stephens and Kenneth Tatum.

After an exhaustive manhunt and investigation, including patrol officers, police dogs, detectives, and FBI agents, Smith, Stephens, and Tatum were arrested and indicted. After a trial by jury in May of 2000, Smith was convicted of entering a bank with intent to commit a felony, armed bank robbery resulting in death, and the related aiding and abetting charges. The district judge sentenced Smith to life in prison without parole. Smith filed this appeal based upon the following grounds: timeliness of the appeal; sufficiency of the evidence; improper aiding and abetting charge; witness intimidation; improper prosecutorial statements; *Brady* violations; failure to hold an *in camera* review; suggestive identification procedure; and a *Franks* challenge. Each of the points of appeal will be addressed in turn.

2

<u>Timeliness of Appeal</u>

The parties were asked to brief the timeliness of Smith's appeal. On June 27, 2000, the jury reached a verdict. On July 3, 2000, Smith moved for an extension of time to file a motion for new trial, and on July 13, 2000, Smith moved to extend the time for filing his notice of appeal. Both motions were granted, thereby extending the deadline for filing a motion for new trial to August 1, 2000, and the deadline to file an appeal to August 1, 2000, if no motion for new trial was filed, or up to ten days following the denial of a new trial motion. Smith moved for a new trial on August 1, 2000. The motion was denied on August 18, 2000. Smith filed a notice of appeal on August 25, 2000.

Federal Rule of Appellate Procedure 4(b)(3)(A) tolls the time for filing a notice of appeal for ten days after the denial of certain motions, including a motion for a new trial. Fed. R. App. P. 4(b)(3)(A)(i-iii). Thus, Smith's notice of appeal was timely if his motion for new trial was timely filed. Federal Rule of Criminal Procedure 33 allows the court to set any time for the filing of a motion for new trial so long as it does so within seven days of the verdict. Fed. R. Crim. P. 33. The district court granted Smith an extension of time to file his new trial motion six days after the verdict. Smith therefore filed his motion within the period set by the extension. Accordingly, Smith's appeal is timely.

<u>Sufficiency of the Evidence</u>

Smith challenges the sufficiency of the evidence supporting his conviction. This Court reviews the sufficiency of the evidence supporting a conviction by asking whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Guerrero,*

3

169 F.3d 933, 938-39 (5th Cir. 1999). This standard does not change when the evidence is largely circumstantial. *See Guerrero,* 169 F.3d at 939.

The evidence linking Smith to the robbery consists of the following: the identification by Flahie, one of the women shot during the robbery; the identification by Vernon Jackson, the man in the drive-through teller lane during the robbery; the identification by Latasha Alford, testifying that Smith was the one who was supposed to be in the car with Charles Stephens; the identification by a bank employee that Smith had come to the bank the day before the robbery and, finding that it was closed, slammed his hand against the glass; the testimony of Smith's girlfriend that he was out of breath and concerned about the police upon entering her house around the time the police chase went through the neighborhood; and the telephone call from Stephens' hotel room to Smith's house.

In this case, the evidence is more than merely circumstantial. There are two eyewitness identifications from the scene of the robbery/murder and another identification by a witness to the casing of the bank by Smith the day before the robbery. When this evidence is viewed in the light most favorable to the prosecution, the jury's verdict cannot be labeled as irrational, and, accordingly, the verdict must stand.

FDIC Status

Smith challenges the sufficiency of the evidence establishing that First Federal Savings Bank, East Marshall Branch was insured by the Federal Deposit Insurance Corporation ("FDIC") on the day of the robbery. The federal crime of bank robbery contains a jurisdictional requirement that the bank be either a member of the Federal Reserve System, be organized under the laws of the United States, or be insured by the FDIC. 18 U.S.C. § 2113(f). Smith focuses only on the

last element, so it will be the only one addressed by this Court. This Court reviews the sufficiency of the evidence by asking whether a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt after the evidence is viewed in the light most favorable to the prosecution. *United States v. Maner,* 611 F.2d 107, 108 (5th Cir. 1980).

At trial, an FDIC certificate issued to the First Federal Savings Bank, East Marshall Branch dated May 31, 1995, and the testimony of two bank employees were offered to prove that the bank was FDIC insured at the time of the robbery. This Court has repeatedly upheld the sufficiency of proof of insurance status based on the testimony of bank employees. *United States v. Murrah,* 478 F.2d 762, 764, n.2 (5th Cir. 1973); *United States v. Rangel,* 728 F.2d 675, 676 (5th Cir. 1984); *United States v. Guerrero,* 169 F.3d at 944-45. The evidence here passes this circuit's test for sufficiency of proof of insured status.

Aiding and Abetting Charge

Smith challenges the sufficiency of the evidence supporting his conviction for aiding and abetting the robbery of a federally insured bank in violation of 18 U.S.C. §2. Smith argues that since the government tried the case on the theory that he was the shooter with Stephens aiding and abetting, Smith cannot be charged with aiding and abetting himself. Smith argues that there is no evidence that he aided and abetted Stephens and that the trial court should not have given an instruction to the jury on aiding and abetting.

This Court reviews the decision of the trial court to give an aiding and abetting jury instruction for abuse of discretion. *Bortello v. United States,* 991 F.2d 189, 191 (5th Cir. 1993). The sufficiency of the evidence supporting a conviction is reviewed under the rational jury standard as previously discussed. *See Guerrero,* 169 F.3d at 933.

5

While Smith's argument that one cannot aid and abet oneself is no doubt true, the problem with Smith's theory lies in the fact that there was someone else involved in the robbery. Stephens was arrested upon exiting the crashed vehicle, and witnesses testified that someone exited the same vehicle at the Washateria. If the jury believed Smith was in the car, it could have found him guilty of aiding and abetting the robbery. Further, an aiding and abetting indictment is implicit in every charged offense. *United States v. Neal,* 951 F.2d 630, 633 (5th Cir. 1992). Combined with the evidence presented at trial, the trial court's decision to offer an aiding and abetting jury instruction was not an abuse of discretion.

Witness Intimidation

Smith contends that the government intimidated witnesses Roland Dunn and Tajuana Smith. Dunn was interviewed the day after the robbery and claimed to have seen a passenger of the getaway car flee when the car was in the parking lot of the Washateria. Specifically, Smith claims that agents forced Dunn to leave his job to come to the station for questioning and that Dunn was pressured to sign a release that would allow investigators to obtain his military and social security records. Tajuana Smith was Smith's girlfriend at the time of the robbery. Smith claims that the government intimidated Tajuana Smith by demanding that she come to the station for questioning; by questioning her until 1:30 a.m.; by denying her mother access to the interview since Tajuana Smith was only sixteen at the time; and by telling Tajuana Smith's mother that Smith was no longer represented by certain counsel. At trial, Smith objected to the government's intimidation of Dunn and moved for a mistrial. The trial court denied the request for a mistrial on the basis of government intimidation.

6

We review a denial of a motion for a mistrial for an abuse of discretion. *United States v. Dupre,* 117 F.3d 810, 823 (5th Cir. 1997). Plain error analysis applies to allegations of intimidation of Tajuana Smith since the error was not raised at trial. Fed. R. Crim. P. 52(b).

Smith argues that the actions of the prosecution towards Dunn and Tajuana Smith constitute interference with his Fifth Amendment right to present witnesses. The Fifth Amendment guarantees a defendant the right to present witnesses in his defense free of government retaliation that hampers the ability of the witness to testify. *Webb v. Texas,* 409 U.S. 95, 98 (1972). This right is violated by "substantial government interference with a witness' free and unhampered choice to testify." *United States v. Goodwin,* 625 F.2d 693, 703 (5th Cir. 1980). Smith's arguments do not rise to the level of interference with a witness; there was no governmental attempt to prevent the witnesses from testifying. *United States v. Hammond,* 598 F.2d 1008,1013 (5th Cir. 1979). Where the prosecution does not interfere with the "unhampered choice to testify," there is simply no constitutional violation. *United States v. Thompson,* 130 F.3d 676, 686 (5th Cir. 1997). Both Dunn and Tajuana Smith testified at trial, moreover, there is no evidence that either witness failed to testify to something because of the alleged government interference. The district court did not abuse its discretion in refusing to grant a mistrial based on prosecutorial misconduct, nor was there any plain error in the trial court's determination that Tajuana Smith had not been intimidated.

Improper Prosecutorial Statement

During cross-examination of a defense expert witness on eyewitness identification, the prosecution asked the witness if he was familiar with the courtroom procedure regarding inappropriate or outlandish testimony. The prosecution further queried if the expert witness knew

that if such testimony were deemed inappropriate a court may refuse to allow the jury to hear that testimony. Smith objected to this questioning and asked for a curative instruction. The district court denied the specific instruction that Smith requested but did offer the following to the jury:

> You are the judge of the facts, credibility of the witnesses, who to believe, who not to believe. You can believe it all or not any of it. You are totally the determining factor of what a person says and how they say it, their demeanor or however you want to weigh them. It is you who determines what is to be believed or not believed.

Smith argues that the statement by the prosecutor was intended to suggest to the jury that the district court had already made a credibility determination. Smith moved for a mistrial, which was denied by the trial court.

This Court reviews a denial of a mistrial for abuse of discretion. *Dupre,* 117 F.3d at 923. In reviewing alleged prosecutorial misstatements, two questions are asked: (1) whether the statement is improper and (2) if the statement is improper, whether the statement affected the substantial rights of the accused. *United States v. Gallardo-Trapero,* 185 F.3d 307, 320 (5th Cir. 1999). In determining whether or not a statement by the prosecutor is improper, emphasis should be placed on the context. *United States v. Young,* 470 U.S. 1, 12 (1985). In the present case, the alleged impropriety was limited to a single question during cross-examination of a defense witness and the trial court gave a curative instruction; therefore, the prosecutor's statement was not improper.

### *Brady* Claims

In an April 12, 2000 agreed discovery order, the prosecution claimed that it had produced all relevant investigatory information related to those observing the passenger fleeing the Buick when it was in the Washateria parking lot. At trial, Ronald Dunn testified that he had been

8

interviewed twice by authorities on the day of the robbery. Dunn testified that he told authorities that it was not Smith whom he had seen fleeing the Buick. After this testimony, Smith made a *Brady* motion requesting all notes relating to the interviews of Dunn and any other witness who had observed the person fleeing from the Buick in the Washateria parking lot. The prosecution did produce a computer printout indicating that some of the officers had interviewed Dunn on the day of the robbery. Thereafter, Smith moved to dismiss the indictment, moved for a mistrial, moved that the prosecutor's file be placed under seal and made part of the record, and moved for an *in camera* inspection of the prosecutor's file. The trial court denied these motions. However, the trial court did order the prosecution to make an inquiry into whether there was any additional information related to observations of the person who fled the Buick in the Washateria parking lot. At this point a detective indicated that he had interviewed some children in the vicinity of the Washateria and that they had seen someone named Greg Worth in the area near the time of the robbery.

Ronald Dunn lives only a few blocks from the Washateria and was interviewed by police on the day of the robbery. Dunn testified at trial that during his initial interview with police, he had described the man fleeing the Buick at the scene of the Washateria as a "tall, skinny, and dark-complected" black man. The children who were interviewed at the scene of the Washateria told police that they had seen a man named Greg Worth at the Washateria. The children told the police that Worth was standing around laughing. The children also claimed to have seen Worth drop something in the bushes, which he later retrieved after the police had left the area. Worth fits the description given by Dunn.

9

The Fifth Amendment's Due Process Clause protects defendants from prosecutors' withholding material exculpatory evidence. *Brady v. Maryland* requires the government in a criminal prosecution to "disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial." 373 U.S. 83 (1963); *United States v. Bagley,* 473 U.S. 667, 675 (1985). To establish a *Brady* violation, a defendant must show (1) that the state withheld evidence, (2) that the evidence is favorable to the accused, and (3) that the evidence is material to guilt or punishment. *See id.* at 674. In determining whether or not evidence is material, the Supreme Court has offered four guideposts. First, materiality does not require the defendant to demonstrate by a preponderance of the evidence that the omitted evidence would have resulted in an acquittal. Second, the defendant does not need to weigh the withheld evidence against the disclosed evidence in order to show that he would have been acquitted by the resulting totality. Third, if the evidence is found to be material, then there is no need to conduct a harmless error analysis. Finally, the withheld evidence should be considered as a whole, not item by item. *See Kyles v. Whitley,* 514 U.S. 419, 434-37 (1995). Accordingly, a criminal defendant does not need to show that his trial necessarily would have had a different outcome to show a due process violation when the prosecution withholds evidence. This circuit reviews a trial court's *Brady* holdings *de novo*. *United States v. Green,* 46 F.3d 461, 464 (5th Cir. 1995).

*Brady* does not impose on the prosecution a general obligation to share all discovery with the defense. If the defense knows of material before trial, no *Brady* violation is possible; this is also true of information that the defendant could have discovered with due diligence. *United States v. Prior,* 546 F.2d 1254, 1259 (5th Cir. 1977); *United States v. Ramirez,* 810 F.2d 1338, 1343 (5th Cir. 1987); *United States v. Maloof,* 205 F.3d 819, 827 (5th Cir. 2000). There is no

10

*per se* violation even when potential *Brady* information is discovered during trial; rather, in those cases, the relevant question is whether the defendant is prejudiced by a disclosure that came later than it should have. *United States v. McKinney,* 758 F.2d 1036, 1050 (5th Cir. 1985); *United States v. Neal,* 27 F.3d 1035, 1050 (5th Cir. 1994).

No *Brady* violation is present from the facts on the Dunn information; Smith does not dispute knowing of the existence of Dunn well before trial. Because Smith knew of Dunn, the slightest amount of investigatory evidence would have produced the information revealed at trial. Additionally, this Court finds that there is no *Brady* violation regarding the information on Worth because Smith has not shown that he was prejudiced by this disclosure during trial. The information revealed that some children had seen Worth near the Washateria, but Smith has directed the Court to no evidence indicating the time frame of when the children saw Worth. There was an exhaustive and lengthy police search for the person who fled the getaway car at the Washateria. Yet there is no time frame for when the children allegedly saw Worth at the Washateria. While the information was disclosed during the presentment of Smith's case and it is likely that Smith's counsel had to scramble to use the information, there is no indication of any prejudice.

### *In Camera* Review

After Dunn testified, Smith moved for an *in camera* review of the prosecutor's file for any other possible *Brady* material. The trial court denied the motion. This Court reviews decisions regarding *in camera* reviews of the prosecutor's file for an abuse of discretion. *United States v. Gonzalez,* 466 F.2d 1286, 1288 (5th Cir. 1972). A trial court is not required to search through a file unless the defendant first establishes a basis for the claim that the file contains material

11

evidence. *Pennsylvania v. Ritchie,* 480 U.S. 39, 58 (1987). Moreover, a trial court is not required to conduct an *in camera* review of unspecified *Brady* material even after a tardy disclosure of other *Brady* material. *United States v. McKinney,* 758 F.2d 1036, 1051-52 (5th Cir. 1985). Because Smith's request was only generalized, the district court did not abuse its discretion by refusing to conduct an *in camera* review.

In-Court Identification

Smith argues that his in-court identification by government witness Vernon Jackson was impermissibly suggestive. The Due Process Clause protects defendants from the use of identification evidence based on procedures that are highly suggestive. *See Manson v. Brathwaite,* 432 U.S. 98 (1977). Jackson's in-court identification of Smith was not impermissibly suggestive; the in-court identification was based on Jackson's prior recognition of Smith from a newscast that had aired two days before the robbery. *See United States v. Sharpe,* 193 F.3d 852, 868 (5th Cir. 1999). Smith, however, contends that he was not on the newscast that triggered Jackson's identification of Smith. This information is a factual matter for the jury. Presumably the jury interpreted the testimony of the news director and Jackson and determined that Smith was on the newscast.

Invalid Arrest Warrant - *Franks* Challenge

Smith argues that two statements he made after his arrest should have been suppressed because they were the product of an invalid arrest warrant. Specifically, Smith contends that the statement that he claimed to be with his girlfriend on the morning of the robbery and the statement that he called his grandmother from his girlfriend's house should have been suppressed. Smith

12

contends that the arrest warrant contained false statements of fact and that certain important information was omitted. The trial court denied Smith's motion to suppress the statements.

If a search warrant contains a statement made "knowingly and intentionally, or with reckless disregard for the truth" that is included in the warrant affidavit, and that statement is "necessary to the finding of probable cause," evidence flowing from that warrant must be suppressed. *Franks v. Delaware,* 438 U.S. 154, 155-56 (1978). In this Circuit, an omission can qualify as a *Franks* violation. *United States v. Tomblin,* 46 F.3d 1369, 1376 (5th Cir. 1995). This Court reviews the decision of the trial court on a *Franks* hearing for clear error. *Id.* After reviewing the record, the Court finds that there was no clear error in the trial court's determination.

## Conclusion

For the foregoing reasons, we **AFFIRM** the conviction of Defendant-Appellant Smith.